**AIR POWER, INC., Appellant,**

v.

**The UNITED STATES of America,
Appellee.**

**No. 83–1667.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1984.

Decided Aug. 9, 1984.

David Hugh Boyd, Fairfax, Va., for appellant.

William P. Wang, Tax Div., Dept. of Justice, Washington, D.C. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, William S. Estabrook, III, Tax Div., Dept. of Justice, Washington, D.C., on brief), for appellee.

Before HALL, MURNAGHAN and SPROUSE, Circuit Judges.

SPROUSE, Circuit Judge:

Air Power, Inc. (Air Power), appeals from the district court's decision granting a federal tax lien priority over its earlier

state judgment lien against properties belonging to VWV Utility Construction Company, Inc. (VWV). The parties agree that Air Power's judgment lien was perfected under Virginia state law before the United States filed the required notice of its tax lien. 26 U.S.C. § 6323(f). The single issue presented on appeal is whether Air Power's judgment was secured from a "court of record," as required by Supreme Court decision and the governing Internal Revenue Service (IRS) regulations, thus entitling Air Power to "judgment lien creditor" status and priority over a later-filed federal tax lien. *United States v. Gilbert Associates,* 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); 26 C.F.R. § 301.6323(h)–1(g). *See also* 26 U.S.C. § 6323(a). The district court resolved this issue in favor of the United States, noting that the Virginia legislature has characterized the Virginia general district court from which Air Power secured its judgment as a "court not of record." VA.CODE § 16.1–69.5(a). We hold that whether a judgment issues from a "court of record" for purposes of section 6323 priority under the Internal Revenue Code is a question of federal law and that application of uniform criteria places the general district courts of Virginia in that category. Accordingly, we reverse.

## I

On April 22, 1982, Air Power secured a prejudgment writ of attachment from the General District Court of Loudon County, Virginia, against personal property belonging to VWV. The identified property was seized two weeks later by the Sheriff in satisfaction of VWV's $4,803 debt and default judgment was entered in Air Power's favor soon afterwards for the full amount of the debt. After the required legal notices were given, the general district court authorized the Sheriff to sell the seized property on June 25, 1982, with the proceeds to be paid to Air Power, the judgment lien creditor.

Meanwhile, the IRS had demanded payment from VWV for delinquent federal employment taxes. Although VWV failed to respond to its demand in early April 1982, the IRS did not file the required notice of tax levy against VWV with the Virginia State Corporation Commission until June 24, 1982, the day before the scheduled sheriff's sale. The IRS then notified the Sheriff of Loudon County not to release any proceeds from the sale to Air Power, contending the federal tax lien superseded its state court judgment. Air Power responded by bringing this wrongful levy action in federal district court claiming priority to the proceeds of the Sheriff's sale by virtue of its earlier perfected lien. *See* 26 U.S.C. § 7426(a)(1). The district court, on proper motion, awarded summary judgment to the United States, ruling that Air Power's state lien was not entitled to priority because its judgment was not obtained from a "court of record." It based its ruling on the language of the Virginia statute specifically characterizing the general district court as a "court not of record."

On appeal, Air Power contends that the district court erred in relying solely on the label given by Virginia state law to the general district court in determining whether its judgment lien issued from a "court of record." It argues that whether a judgment issues from a "court of record" for purposes of determining priority under 26 U.S.C. § 6323(a) is a question of federal law and that the specific and intrinsic attributes of Virginia general district courts make them courts of record for this purpose. We agree.

## II

The United States possesses a statutory lien against all personal and real property belonging to a delinquent taxpayer from the time he refuses or neglects to heed a lawful demand for payment. 26 U.S.C. § 6321. A federal tax lien's priority over other lawful debts is generally determined by applying "the first in time, first in right" rule. *See United States v. Pioneer American Insurance Co.,* 374 U.S. 84, 87, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963). Originally, a federal tax lien took priority over virtually all other general

liens perfected after the government made a lawful demand for payment from the delinquent taxpayer, even if the competing lienholder had no notice of the government's claim. *Cf. United States v. City of New Britain,* 347 U.S. 81, 84–88, 74 S.Ct. 367, 369–371, 98 L.Ed. 520 (1954). Although it has retained this basic scheme of priority for most competing general liens throughout the history of the Internal Revenue Code, Congress in the last fifty years has chosen to extend special protection to certain classes of creditors whose interests are perfected and specific before they have notice of outstanding federal tax liens. *See* 26 U.S.C. § 6323(a). One such protected class is the "judgment lien creditor." [1]

■ The priority of a judgment creditor's lien over a federal tax assessment is determined from the time the government files its notice of a lien with appropriate state officials, rather than from the time of its demand for payment. 26 U.S.C. § 6323(a). A qualifying creditor's rights are superior as long as his judgment is perfected [2] before the government gives constructive notice of its right to the delinquent taxpayer's assets. Congress' purpose in imposing the notice requirement on the government was to protect the perfected interests of innocent third parties from "secret tax liens." *Gilbert Associates,* 345 U.S. at 363–64, 73 S.Ct. at 703.

The dispute between the parties in this appeal turns on whether Air Power qualifies as a "judgment lien creditor" for the purposes of special lien priority under section 6323(a). The IRS regulations implementing this statutory provision define a "judgment lien creditor" as:

> ... a person who has obtained a valid judgment, in a *court of record* and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money ... [and] who has perfected a lien under the judgment on the property involved....

26 C.F.R. § 301.6323(h)–1(g) (emphasis supplied). The "court of record" requirement, which was the basis of the ruling below in favor of the United States, originates from the Supreme Court's decision in *United States v. Gilbert Associates,* 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071. In that case, the Town of Walpole, New Hampshire administratively assessed a local tax lien against a company facing a similar tax lien from the United States government. The town claimed priority over the federal tax lien because its assessment was perfected under state law before the United States filed the notice of its own lien, as required by the predecessor statute to section 6323. The United States conceded its filing was later in time, but argued that the town was

1. The applicable provision of the Internal Revenue Code states that:

   The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or *judgment lien creditor* until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate. 26 U.S.C. § 6323(a) (emphasis supplied). The predecessor provision to section 6323(a) only provided notice protection to a "mortgagee, pledgee, purchaser, or judgment creditor." *See Priority of Federal Tax Liens and Levies, Hearings on H.R. 11256 and 11290 Before the House Comm. on Ways and Means,* 89th Cong.2d Sess. 37 (March 2, 1966) (Statement of Stanley S. Surrey, Ass't Secretary of Treasury). The 1966 amendments to the Internal Revenue Code expanded this protected group to include mechanic's lienors and holders of a security interest. These same amendments created "superpriority" protection for certain creditors whose interests arose before notice of the federal tax lien, but

were not choate until after notice was received. *See* 26 U.S.C. § 6323(b), (c) and (d). These changes were designed to increase the protection afforded private sector creditors and to modernize the relationship between federal tax liens and other commercial creditors. *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 738, 99 S.Ct. 1448, 1463, 59 L.Ed.2d 711 (1979).

2. Courts generally look to state law in determining whether a competing state court lien is perfected or choate against third party creditors, but federal law governs the actual legal effect of the judgment for tax priority purposes. *See Hartford Provision Co. v. United States,* 579 F.2d 7, 9 (2d Cir.1978). *See also* 26 C.F.R. § 301.-6323(h)–1(g). Additionally, certain threshold federal requirements of choateness must be satisfied before the lien can qualify for priority treatment. *See United States v. City of New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954).

not a "judgment creditor" [3] within the meaning of the applicable statute, and thus not entitled to notice of the pre-existing lien. The Supreme Court agreed, explaining that the need for uniformity in defining "judgment creditor" required that the effect of the state's tax assessment on the federal priority question be determined according to federal law:

A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a "judgment creditor" should have the same application in all the states. In this instance, we think Congress used the words "judgment creditor" in § 3672 [predecessor to § 6323] *in the usual, conventional sense of a judgment of a court of record, since all states have such courts.* We do not think Congress had in mind the action of taxing authorities who may be acting judicially as in New Hampshire and some other states, where the end result is something "in the nature of a judgment", while in other states the taxing authorities act quasi-judicially and are considered administrative bodies.

*Gilbert Associates,* 345 U.S. at 364, 73 S.Ct. at 703 (footnote omitted) (emphasis supplied).

The crucial langue in *Gilbert* for our purposes is that by which the Supreme Court equated the term "judgment creditor" with someone possessing "a judgment of a *court of record.*" The IRS, which has incorporated *Gilbert's* "court of record" requirement into its administrative regulations, takes the position before this court

that the Virginia statute labeling its general district courts as "courts not of record" should control the issue of whether Air Power's state judgment is entitled to priority over a federal tax lien. The district court below agreed. Air Power, seeking to overturn this ruling, argues that allowing the state's label to control would strike at the very heart of federal tax policy—the need for uniformity.

### A.

■ The taxing power is one of the most jealously guarded prerogatives exercised by Congress. State law simply may not provide controlling guidance in this sensitive area unless "the federal taxing act by express language or necessary implication makes its operation dependent upon state law." *Lyeth v. Hoey,* 305 U.S. 188, 194, 59 S.Ct. 155, 158, 83 L.Ed. 119 (1938). *See also Morgan v. Commissioner,* 309 U.S. 78, 80–81, 60 S.Ct. 424, 425–426, 84 L.Ed. 585 (1940). State law unquestionably defines the property rights being asserted in section 6323(a) cases, for the very purpose of the provision is to give effect to certain state-created property interests when they are competing with a federal tax lien. *See* 1966 Senate Report, *supra,* note 3, at 3722–23. However, nothing in section 6323(a) of the Internal Revenue Code or its legislative history indicates that Congress, either explicitly or by necessary implication, contemplated giving state law preeminence in matters relating to the treatment or priority a judgment lien is to be accorded when competing with a federal tax lien.[4] The rele-

---

**3.** Under the predecessor statute to section 6323, a "judgment creditor" was entitled to notice of an existing federal tax lien. In its 1966 revisions to the Internal Revenue Code, however, Congress changed "judgment creditor" to "judgment lien creditor." The Senate Report discussing this change made it plain that the addition of the word "lien" did not alter the definition courts had traditionally given to "judgment creditor." S.Rep. No. 1708, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Admin. News 3722, 3724 [hereinafter cited as 1966 Senate Report].

**4.** There are several references in the provisions of subsection 6323(b), (c), and (d) allowing lien

priority to be determined in accordance with state law for certain claimants, but no similar expressions for a section 6323(a) judgment lien creditor. The legislative history indicates that Congress was satisfied with the interpretations courts had historically given to the notice provisions of 6323(a) and chose not to disturb them. Its clear purpose in tying section 6323(b) and (c) protection to state law, however, was to override federal court decisions that had made these identified state property interests subordinate to federal tax liens. *United States v. Kimbell Foods, Inc.,* 440 U.S. at 720 n. 6, 99 S.Ct. at 1454 n. 6. Uniformity was not an overriding concern when Congress allowed state law to control in

vant statutory language simply states that the government's lien "shall not be valid as against any ... *judgment lien creditor* until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary or his delegate." 26 U.S.C. § 6323(a) (emphasis supplied). Although the Internal Revenue Code offers no definition of "judgment lien creditor,"[5] the senate committee report discussing this aspect of federal tax law makes it plain that a person qualifying for judgment creditor status "will be entitled as such to the protection of this section irrespective of the designation [state law gives to that person]" S.Rep. No. 1622, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad. News 4621, 5224.[6] Courts have confirmed congressional intent in this area by holding uniformly that judgment lien priority is governed by federal law and federal concerns. *See, e.g., United States v. Speers*, 382 U.S. 266, 270–72, 86 S.Ct. 411, 413–414, 15 L.Ed.2d 314 (1965); *Gilbert Associates*, 345 U.S. at 364, 73 S.Ct. at 703; *United*

*States v. Hunt*, 513 F.2d 129, 133 (10th Cir.1975).

▮ *Gilbert's* direction that the term "judgment [lien] creditor" be defined "in the usual, conventional sense of a judgment of a court of record," *Gilbert*, 345 U.S. at 364, 73 S.Ct. at 703, must be interpreted in light of the overriding and long-established principle that federal law governs tax policy.[7] The United State's position on the resolution of the "court of record" issue would seriously undermine this principle and be at odds with *Gilbert* itself. The Supreme Court in *Gilbert* held that the Town of Walpole could not qualify as a judgment creditor for federal tax purposes simply because the state of New Hampshire conferred that status upon it. The Court, in essence, recognized that many state practices, although legitimate within their own jurisdictional sphere, could not be binding on a federal court in a lien priority case arising under the federal tax laws. The priority rights conferred by Congress, the Court explained, are distinctly federal in nature and must be decided

these special cases because most states had moved in the direction of incorporating the provisions of the Uniform Commercial Code into their own laws. The rules controlling "judgment lien creditor" status were presumably left undisturbed because the Uniform Commercial Code does not treat this category of creditors. *See* U.C.C. § 9–104(h).

5. In conjunction with the 1954 revisions to the Internal Revenue Code, the House of Representatives passed a version of section 6323 that made a judgment lien creditor's priority rights contingent upon him "actually obtain[ing] a valid judgment in a court of record and of competent jurisdiction for the recovery of specifically designated property or for a certain sum of money," H.R.Rep. No. 1337, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad.News 4017, 4555. The purpose of this proposed requirement was to make it clear "that particular persons [will] not be treated as judgment creditors because State or Federal law artificially provides or concedes such persons rights or privileges of judgment creditors, or even designates them as such, *when they have not actually obtained a judgment in the conventional sense.*" *Id.* The competing Senate version did not contain this requirement and ultimately became the approach enacted into statute. The conferees adopted the Senate's version to continue in effect existing law, including applicable rules de-

veloped by judicial construction. H.R.Rep. No. 2543, 83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad.News 5280, 5340.

6. This discussion of the meaning of "judgment creditor" occurred before the 1966 revisions to section 6323 of the Internal Revenue Code. As previously mentioned, however, the only change affecting "judgment creditor" was the addition of the word "lien." *See* note 3 *supra*.

7. In commenting on *Gilbert's* "court of record" language, the American Bar Association's Committee on Federal Liens indicated that "there appears no reason to discriminate against judgments rendered by lesser courts if, by docketing, they have become liens." *American Bar Association Final Report of the Committee on Federal Liens*, 26 (1959), *reprinted in Priority of Federal Tax Liens and Levies: Hearings on H.R. 11256 and H.R. 11290 Before the House Comm. on Ways and Means*, 89th Cong., 2d. Sess. 60, 167 (1966) (statement and submissions of Laurens Williams, Chairman, Special Committee on Federal Liens, ABA). The ABA Committee was a driving force in the successful effort to modernize the federal law respecting lien priority. The Supreme Court itself implicitly cautioned against a mechanical interpretation of *Gilbert's* "court of record language" in *United States v. Speers*, 382 U.S. at 270–71, 86 S.Ct. at 413–414.

accordingly. These rights cannot vary depending on the locale, but "should have the same application in all the states." *Gilbert*, 345 U.S. at 364, 73 S.Ct. at 703. Uniformity, the Court further emphasized, is the guiding principle in matters relating to the federal government's taxing power. In short, the unmistakable message of *Gilbert* is that inconsistent state practices, though controlling in the host jurisdiction, must yield to a consistent federal rule to insure uniform application of the tax laws.

### B.

■ We obviously cannot intrude on the state of Virginia's prerogatives to organize and structure its courts in the way it deems appropriate to meet local concerns. Our purpose is simply to determine whether the judgment of one of its general district courts is entitled to respect from a federal court considering a federal lien priority case. The answer can only be supplied by analyzing the true character of the issuing court in light of Congress' expressed desire to confer special protection to certain qualifying state-created property interests.

The design Virginia has chosen for its court system generally conforms to the model used by other jurisdictions. The Virginia Supreme Court of Appeals is at the apex of the judicial hierarchy and has final appellate jurisdiction over all civil and criminal matters. *See generally* VA.CODE §§ 17–93 to –116. Directly below it is the recently created Virginia Court of Appeals, which will assume appellate jurisdiction over lower court decisions beginning in 1985. VA.CODE §§ 17–116.01 to –116.014. At the trial level, the various circuit courts fulfill the function of courts of general jurisdiction. They have original jurisdiction in all criminal matters involving felonies and in all civil matters involving more than $7,000. VA.CODE § 17–123. They also possess concurrent jurisdiction with general district courts for civil cases involving less than $7,000 but more than $1,000, VA.CODE § 16.1–76–77, and may undertake *de novo* review of the decisions of

"courts not of record" in certain instances. VA.CODE § 16.1–106.

At the bottom of the judicial ladder are Virginia general district courts. Despite their label as "courts not of record" and their limited jurisdiction in civil and criminal matters, these courts have many of the attributes of Virginia's circuit courts. General district courts keep and preserve a written record of their proceedings, VA. CODE § 16.1–91 and are presided over by individuals trained in the law, VA.CODE § 16.1–69.15. These courts also possess virtually all the same powers of their circuit court counterparts. They may punish contemnors, VA.CODE § 16.1–69.24, issue subpoenas, VA.CODE § 16.1–69.25, administer oaths, VA.CODE § 16.1–69.27, permit discovery in certain cases, VA.CODE § 16.-1–82 to –89, and take affidavits, VA.CODE § 16.1–69.27. Procedurally, it is likewise difficult to distinguish the general district court from a "court of record" as that institution was known at common law. *Cf.* 20 Am.Jr.2d *Courts* § 26. Suits in general district court must be initiated by a warrant or motion for judgment served on the opposing party. VA.CODE § 16.1–81. The defendant in any action has the right to assert counterclaims against the plaintiff and to have them determined in the same proceeding. VA.CODE § 16.1–88.01. A losing party concededly may appeal an adverse decision to the circuit court and receive a *de novo* trial, but he is precluded from expanding either his claim or request for remedies beyond those presented to the general district court. VA.CODE § 16.1–106. *See also Stacy v. Mullins*, 185 Va. 837, 40 S.E.2d 265 (1946); *Addison v. Salyer*, 185 Va. 644, 40 S.E.2d 260 (1946).

Finally, and perhaps most significantly, the substantive effect of a final decision from the general district court is the same as that of a final decision from a circuit court. Its decision not only can be enforced by the same mechanisms as the judgment of a circuit court, VA.CODE § 16.1–116, but it is entitled to the same preclusive effect from other state courts. *Petrus v. Robbins*, 195 Va. 861, 80 S.E.2d 543 (1954). *See also* Boyd, Graves & Mid-

dleditch, *Virginia Civil Procedure* § 12.11 (1982). Because federal courts are bound to honor state court judgments to the same extent as the issuing state itself, a Virginia general district court decision presumably would be entitled to full faith and credit if interposed as a defense in a federal suit between the same parties. *See* 28 U.S.C. § 1738. *See also Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

In sum, the label "courts not of record" given to general district courts by the Virginia legislature, though no doubt serving a legitimate state purpose, is not entirely reflective of the true character or present day competency of those tribunals.

### C.

The label a state gives its own courts, of course, provides some guidance on whether a judgment springs from a court of record, but it alone cannot be determinative. *See, e.g., Gilbert*, 345 U.S. at 363–64, 73 S.Ct. at 703. An individual state's reasons for labeling one tribunal "a court of record" and another "not a court of record" may have more to do with the jurisprudential history of the state than the present day competency of the particular tribunal. The factors the state weighed in reaching its labeling decision are almost certain to address different concerns than those implicated in federal tax policy. Weaving these wholly state concerns into the fabric of national tax policy could only negatively affect a tax policy designed to achieve uniform results. To insure consistency and fairness in the application of section 6323(a), a federal court must look to the basic structure and competency of the court issuing the judgment. The dispositive question is not whether the tribunal carries the rubric "court of record," but whether it has been cloaked by its host state with the usual and conventional powers of a "court of record"

and operates as a judicial body. The general district courts of Virginia have those powers and operate in the usual manner of courts of record.

### D.

Deferral to diverse state rules which purport to make ultimate conclusions on the "court of record" question in tax cases not only would defeat the uniformity *Gilbert* sought to achieve, but in given cases could create unconscionable results for individual creditors raising the same claim in different jurisdictions. The case we consider vividly makes this point: Air Power prosecuted its $4,800 claim against VWV in Virginia general district court, a tribunal with competent jurisdiction to hear such claims up to $7,000. VA.CODE § 16.1–77. If we are bound to the label Virginia gave this court rather than the actual judicial powers it possesses, as the government urges, Air Power's claim could not take priority over a later filed federal tax lien, even though the state judgment creditor had no notice of the lien's existence and would be entitled to priority if he were competing with another state lienor.[8] The rule's application to the very same claim now raised by Air Power in other states, however, would produce different results. In the adjoining state of West Virginia, for example, Air Power's claim would take priority over the identical federal lien because that state denominates courts with the power to rule on $4,800 claims as "courts of record." *See generally* W.VA.CODE §§ 51–2–1,–2.

Congress obviously could not have intended such patently unfair and inconsistent results when it cast the language of section 6323(a). *See Gilbert*, 345 U.S. at 364, 73 S.Ct. at 703. The lien priority provisions of the Internal Revenue Code were specifically designed to preserve the perfected interests of innocent third parties from "secret tax liens." This overriding purpose completely unravels if a creditor's

---

**8.** Although it is true Air Power could have proceeded against VWV in Virginia Circuit Court, a tribunal carrying the label "court of record," we see no justifiable reason for penalizing "it" for making a choice legitimately provided by Virginia law as long as the judicial tribunal to which it resorted had the necessary attributes of a court of record.

entitlement to protection becomes captive to the label the individual states give to the court issuing the judgment.[9]

In view of all these considerations, we hold that the general district court of Virginia is a "court of record" for the purpose of affording a judgment lien creditor the special protections contained in section 6323(a) of the Internal Revenue Code.

REVERSED.

K.K. HALL, Circuit Judge, dissenting:

I cannot agree with the majority's conclusion that the general district court of Virginia is a "court of record" for the purpose of affording a judgment lien creditor protection under 26 U.S.C. § 6323(a) (1983). I, therefore, dissent.

As the majority recognizes, the cardinal principle of federal tax policy is to advance a uniform application of the federal tax laws among the states. In striving for such uniformity, the Supreme Court in *United States v. Gilbert Associates, Inc.*[1] explicitly stated that only judgments from courts of record can confer upon a creditor the status of a judgment creditor for federal tax lien purposes.

All states have designated certain courts of original general jurisdiction as courts of record. In the instant case, the Virginia legislature determined that its general district courts were "courts not of record." Va.Code § 16.1–69.5 (1972).[2] The majority's opinion not only ignores the plain language of the Virginia statute but also violates the principle of uniformity. The majority's expansive construction of the phrase "court of record" will inevitably re-

sult in extensive inquiries concerning whether each particular court in the country is a court of record, and will foster inconsistent application of the federal tax laws among the states.

Reference to state statutes, on the other hand, promotes uniformity by providing consistent results as to whether a particular court is a court of record. The application of § 16.1–69.5 in conjunction with federal tax laws dealing with judgment lien creditors would not prejudice creditors such as Air Power because they can proceed in the Virginia Circuit Court, which has been designated a court of record. Furthermore, the application of § 16.1–69.5 in conjunction with federal tax laws provides a bright-line test which can easily be followed by both creditors and courts in other states.

In my view, Va.Code § 16.1–69.5 (1972) is dispositive of this case. Its use advances a uniform application of the federal tax laws and is consistent with the principles of comity. Accordingly, I would affirm the district court.

9. The IRS makes the argument that deferring to the state's designation would actually enhance uniformity by drawing a bright line separating a "court of record" from a "court not of record." The uniformity Congress had in mind when it enacted section 6323, however, relates to ensuring the same treatment for a third party creditor wherever he resides; it does not refer to the ease with which the rule is applied. If the states had formulated a universal scheme for defining a "court of record," the position urged by the IRS would have more force. Such a scheme, however, does not exist, and federal courts are thus bound to formulate a rule that protects a

Virginia judgment lien creditor to the same extent as a lienholder in other states.

1. 345 U.S. 361, 364, 73 S.Ct. 701, 703, 97 L.Ed. 1071 (1953).

2. When the Virginia legislature passed § 16.1–69.5, in 1972, it was undoubtedly aware of the interrelationship the statute would have with the federal tax laws, as *Gilbert* had been decided in 1953, and § 6623(a) had been amended to include an express reference to judgment lien creditors in 1966.