Philip C. BROWN, Plaintiff,

v.

STATE OF MARYLAND and United States of America, Defendants.

Civ. No. H–87–1.

United States District Court, D. Maryland.

Oct. 20, 1987.

Jack I. Leibovitch, Towson, Md., for plaintiff.

John K. Barry, Asst. Atty. Gen., Annapolis, Md., for defendant State of Md.

Karen L. Elias, Dept. of Justice, Washington, D.C., and Larry D. Adams, Asst. U.S. Atty., Baltimore, Md., for defendant U.S.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Chief Judge.

In this civil action, the Court is asked to determine the priority of liens asserted by the parties against certain real property located in Anne Arundel County, Maryland. The principal parties are the plaintiff Philip C. Brown (hereinafter "Brown") and defendants State of Maryland (hereinafter "Maryland") and United States of America (hereinafter "United States"). The amended complaint named as another defendant Estate of Richard F. Moschell. However, all parties agree that Moschell's claim of $205 is a first lien on the property and is entitled to priority over the claims of the other parties. Accordingly, counsel for Moschell have not participated in these proceedings.

Suit was originally filed by plaintiff Brown in the Circuit Court for Anne Arundel County. In his complaint, plaintiff Brown asked the state court to quiet title to the real property in question and enter a declaratory judgment finding that plaintiff's rights were superior to those of other parties named in the action. Claiming that it had an income tax lien on the property, the United States removed the case to this Court pursuant to 28 U.S.C. § 1442(a)(1).

All parties have asserted claims against Charles W. Marmon or against Charles W. Marmon and his wife, Eileen T. Marmon. The Marmons were the record owners of two lots located in Anne Arundel County (hereinafter "the property"). Plaintiff's claim of $76,000 arises as a result of a judgment in that amount obtained by plaintiff against Charles W. Marmon on June 13, 1986 in the Circuit Court for Anne Arundel County. *Brown v. Marmon*, Case No. 1108050, (Cir.Ct. for Anne Arundel County, June 13, 1986). The United States has asserted two claims against the property, both of which result from assessments made by the federal government against the Marmons for unpaid income taxes. An assessment in the amount of $2,048.51 was made against the Marmons on December 5, 1983 for unpaid income taxes for 1981 and an assessment in the amount of $907,340.52 was made on June 25, 1984 for unpaid income taxes for the year 1983. Maryland's claim against the property, like that of the United States, arises as a result of an assessment made by the State against the Marmons for unpaid income taxes. On June 26, 1984, an assessment was made by Maryland against the Marmons in the amount of $162,383.33 for unpaid state income taxes for the year 1983.

Presently before the Court are separate motions for summary judgment filed by plaintiff Brown and by each of the defendants. Memoranda and exhibits have been submitted in support of and in opposition to the pending motions. Oral argument has been heard in open court. For the reasons to be stated herein, the motion for summary judgment of defendant United States will be granted, and the motions for summary judgment of plaintiff Brown and of defendant Maryland will be denied.

## I

### Background Facts

In June of 1984, there was pending in the Circuit Court for Anne Arundel County an action in equity brought by plaintiff against Charles W. Marmon. *Brown v. Marmon*, Case No. 3104775 (Cir.Ct. for Anne Arundel County). In lieu of a bond

of $45,000, the state court required the Marmons to post the property as security in the case. On April 27, 1984, the Marmons executed a deed transferring the property to Jack I. Leibovitch, Steven R. Kuney, and James A. McGuire as trustees to hold the property in trust subject to further order of the Circuit Court for Anne Arundel County. Mr. Leibovitch was and is counsel for plaintiff Brown. Messrs. Kuney and McGuire were counsel for Charles Marmon in the suit brought by Brown against him in the state court. On June 11, 1984, the Circuit Court accepted the property as meeting the bond requirements and transferred Case No. 3104775 from the equity docket to the law docket as Case No. 1108050.

As noted, the United States made separate assessments against the Marmons on December 5, 1983 and again on June 25, 1984 in the respective amounts of $2,048.51 and $907,340.52. Maryland's assessment against the Marmons in the amount of $162,383.33 was made on June 26, 1984, a day after the federal government's assessment of $907,340.52. Maryland's assessment was recorded in the Land Records of Anne Arundel County on September 18, 1984. The United States recorded its $2,048.51 assessment on November 9, 1984 and recorded its $907,340.52 assessment on March 20, 1985. On December 13, 1985, Maryland executed on its tax lien and conducted a sheriff's sale of the Marmons' property. Although Maryland was the sole bidder at the sale, no deed conveying the property to the State was ever recorded in the Land Records.[1]

By Order of the Circuit Court dated June 13, 1986, plaintiff Brown was awarded a judgment against Charles Marmon in the amount of $76,000. Thereafter, on August 8, 1986, the deed of April 27, 1984 from the Marmons to Leibovitch, *et al.* was recorded in the Anne Arundel County Land Records. As a result of the competing claims against the property, plaintiff filed this suit in state court on October 16, 1986.

II

*Discussion*

Insofar as the claim of priority asserted by the United States in this case is concerned, federal law is clearly controlling. 26 U.S.C. § 6321 provides as follows:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6322 provides:

> Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time.

Relying on these statutory provisions, the United States contends that liens arose in its favor on December 5, 1983 and on June 25, 1984 when assessments were made against the Marmons for unpaid income taxes for the years 1981 and 1983. On the record here, this Court would agree. The federal government's tax liens are entitled to first priority against the property. Were it necessary to decide the question,[2] this Court would further conclude that Maryland's lien is superior to that of plaintiff Brown.

(a)

*Plaintiff's Claim*

 In support of his motion for summary judgment, plaintiff Brown relies principally on the deed executed on April 27, 1984 by the Marmons in favor of Leibovitch, *et al.* as trustees. However, this

---

1. The parties agree that this sheriff's sale is without legal effect.

2. When the property is sold and payment made to satisfy portions of the federal lien, there will be no funds left for payment of any part of the other claims.

deed does not establish any superior lien in favor of plaintiff Brown. Plaintiff Brown was not a party to that transaction. Moreover, there was no finality to the purported conveyance. The trustees were to hold the property in trust until further order of the Circuit Court and the conveyance to plaintiff was not recorded in the Land Records of Anne Arundel County until August 8, 1986.

Plaintiff argues that he succeeded to the trustees' interest in the Marmons' property. But the trustees had no fixed interest in the property which would be entitled to priority over the liens created by the federal government's tax assessments. The deed to them was not recorded in the Land Records of Anne Arundel County, and the trustees were holding the property subject to further order of court. Plaintiff's interest did not become fixed until plaintiff secured his judgment in June of 1986 and the deed to him was recorded in August of 1986. These dates are well after the dates when the liens of the United States became fixed. By the unrecorded deed of April 27, 1984, the Marmons did not give up all their right, title and interest to the property. On the contrary, the property was merely posted as a bond in the suit pending in the Circuit Court between plaintiff and Charles Marmon. Indeed, the bond was posted expressly "to provide property from which a possible judgment and cost" might be paid. When the federal tax assessments were made, the Marmons still retained an interest in the property. Such interest was not extinguished until later when plaintiff was awarded his judgment on June 13, 1986. Thus, plaintiff's claim against the property was conditional upon the outcome of his suit against Marmon. His contingent interest is not entitled to priority over the federal tax liens.

Plaintiff's reliance on *United States v. Lebanon Woolen Mills Corporation*, 241 F.Supp. 393 (D.N.H.1964), is misplaced. The facts of that case are quite different from those present here. In this case, the taxpayers still retained an interest in the property when the federal government's assessments were made. Since the taxpayers had an interest in the property when

the federal tax liens were created and since plaintiff's interest in the property was contingent upon his obtaining a judgment against one of the taxpayers, the lien of the United States is entitled to priority over that of plaintiff.

■ As a second argument, plaintiff relies on 26 U.S.C. § 6323. Section 6323(a) provides that the tax lien imposed by § 6321 "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof...." The notice in question is that required by state filing requirements. However, this argument must likewise fail because plaintiff does not fall within any one of the exceptions. It is suggested that plaintiff had a security interest in the property before the United States made the notice requirements of § 6323(a). The term security interest is defined in 26 U.S.C. § 6323(h)(1) as follows:

> The term "security interest" means any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth.

This Court concludes that any interest of the plaintiff in the property resulting from the unrecorded deed of April 27, 1984 was not a security interest within the above statutory definition. Plaintiff's interest was not protected under Maryland law against a subsequent judgment lien arising out of an unsecured obligation. Furthermore, plaintiff did not part with money or money's worth on April 27, 1984.

For all these reasons, this Court concludes that plaintiff's claim does not have priority over the liens of the United States.

### (b)

### *Maryland's Claim*

■ It is well established that in a case involving conflicting state and federal stat-

utory liens, the priority of each contested lien must depend on the time it attached to the property in question and became choate. *United States v. New Britain*, 347 U.S. 81, 86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954). The question presented here then is whether Maryland's tax lien became choate before the federal lien. On the record here, this Court concludes that the federal tax lien became choate on June 25, 1984 at the time when the assessment was made. This was one day before Maryland's assessment was made, and therefore the federal lien is entitled to priority over Maryland's lien.

In support of its motion for summary judgment, Maryland makes two arguments. First, it is contended that Maryland became a judgment creditor before the United States met the notice requirements of § 6323(a). Maryland recorded its notice of assessment on September 18, 1984, and Maryland asserts that it thereby became a judgment creditor pursuant to the provisions of § 6323(a). It is conceded that the United States had not given Maryland any notice by that date, and if Maryland can be considered a judgment creditor because of the action it took on September 18, 1984, its lien would indeed have priority over the federal lien.

Maryland's first argument is foreclosed by *United States v. Gilbert Associates, Inc.*, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953). The issue in that case was whether a municipal lien had priority over a lien of the federal government because the municipality was a judgment creditor within the meaning of 26 U.S.C. § 3672 (the predecessor of 26 U.S.C. § 6323(a)). Although the New Hampshire courts had held that the assessment of a municipal tax was "in the nature of a judgment," the Supreme Court found that the federal lien had priority. In reaching its decision, the Court stated that the meaning of a federal statute is for the Supreme Court to determine and that the term "judgment creditor" should have the same application in all states. The Court concluded that Congress used the words "judgment creditor" in the "usual, conventional sense of a judgment

of a court of record, since all states have such courts." *Id.* 345 U.S. at 364, 73 S.Ct. at 703.

Whatever the effect under state law of the recording by Maryland on September 18, 1984 of a notice of assessment, such recording did not within the meaning of § 6323(a) constitute the entry of a judgment in favor of the State of Maryland by a court of record. As in the *Gilbert* case, the recording by Maryland of notice of its tax lien did not make Maryland a judgment lien creditor.

The Internal Revenue Service has issued regulations defining "judgment lien creditor" as "... a person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money ... [and] who has perfected a lien under the judgment on the property involved...." 26 C.F.R. § 301.6323(h)–1(g). That regulation was quoted and relied upon by the Fourth Circuit in *Air Power, Inc. v. United States*, 741 F.2d 53, 55 (4th Cir.1984).

Quite clearly, Maryland cannot in this case meet the definition of "judgment lien creditor" adopted by the I.R.S. Although, under Maryland law the recording of a notice of a tax lien may be similar to or in the nature of a judgment, this is not sufficient under the *Gilbert* case. The term "judgment creditor" must have the same application in all states, and the uniform definition adopted by the I.R.S. is the one to be applied here.

Maryland's reliance on the *Air Power, Inc.* case is misplaced. There, a private judgment lien creditor was involved, and the critical question was whether the judgment had been obtained in a court of record in Virginia. In concluding that the Virginia court in question was a court of record under federal law, the Fourth Circuit, in applying federal law, emphasized the importance of nationwide uniformity. The principle of nationwide uniformity would not be advanced were this Court to rule that Maryland became a judgment lien creditor merely by recording a notice of the

existence of its tax lien in the County land records.

In *CIT Corporation v. United States*, 344 F.Supp. 1272, 1276 (N.D.Cal.1972), the Court held that a California tax lien arising as a result of the filing of such lien in the debtor's county records did not mean that California should be considered a "judgment lien creditor" under federal law, even though under California law such a filing entitled the State to be considered a judgment lien creditor. Similarly, whatever might be the effect under Maryland law of the action taken on September 18, 1984, the facts here do not establish that Maryland was a judgment lien creditor under § 6323(a).

■ As its second argument, Maryland contends that its lien became choate on April 15, 1984, when the Marmons filed their Maryland income tax return indicating a tax due in the amount of $131,361. No payment was made by the Marmons at the time their Maryland return was filed. On May 16, 1984, the Income Tax Division of Maryland's Office of Comptroller noted such liability and mailed an assessment notice to the Marmons for $31,361.[3] Maryland contends that pursuant to the provisions of § 322 of Art. 81, Md.Ann.Code, a tax lien in its favor arose on April 15, 1984 or at least on May 16, 1984 when the assessment notice and bill were sent to the taxpayers.

This Court concludes that Maryland's tax lien did not become choate until June 26, 1984, which was one day after the federal government's assessment of $907,340.52. A state lien becomes choate when it is perfected "in the sense that there is nothing more to be done to have a choate lien— when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. Vermont*, 377 U.S. 351, 355, 84 S.Ct. 1267, 1269, 12 L.Ed.2d 370 (1964), quoting from *United States v. New Britain, supra,* 347 U.S. at 84, 74 S.Ct. at 369.

In *In re Priest*, 712 F.2d 1326 (9th Cir. 1983), modified, 725 F.2d 477 (1984), the Ninth Circuit, confronted with facts similar to those in this case, held that a California lien did not become choate on the date that the taxpayer filed a return disclosing the amount of the tax due but not including a remittance. The Court concluded that the mere receipt by the State of a delinquent tax return is much too vague and indefinite a standard for establishing the date of the lien. The Court said the following:

> Significant delays might well occur before there was even any acknowledgement of the Director's receipt of the delinquent return, or any administrative act by which the State acknowledged in its own accounts that the taxpayer is liable for unpaid taxes, or the precise amount of that delinquency, and the amount of penalty, interest and fees.

*Id.* at 1329.

Similarly, in this case, the mere receipt by Maryland of the Marmons' tax return is insufficient under federal law to establish a choate lien in favor of the State. Moreover, the bill sent on May 16, 1984 is subject to similar deficiencies. Not only was the bill in error, but it did not include any calculation of penalties and interest. When on June 26, 1984 the formal assessment of a tax deficiency against the Marmons was made by Maryland, the amount was $162,383.33, a figure which did include penalties, interest and costs. For the reasons stated in *In re Priest*, this Court concludes that Maryland's lien asserted in this case did not become choate until June 26, 1984, which was one day after the second federal tax lien became fixed.

Accordingly, it is this 20th day of October, 1987 by the United States District Court for the District of Maryland,

ORDERED:

1. That plaintiff's motion for summary judgment be and the same is hereby denied;

---

**3.** Because of certain processing errors the bill submitted was for $31,361 instead of the $131,- 361 shown on the return.

2. That the motion for summary judgment of defendant State of Maryland be and the same is hereby denied;

3. That the motion for summary judgment of defendant United States be and the same is hereby granted;

4. That upon a sale of the property involved in this civil action the claim of Estate of Richard F. Moschell for $205.00 shall be entitled to first priority;

5. That following payment of the claim of Estate of Richard F. Moschell, the United States shall be entitled to priority payment of its claims since the federal tax liens in question are liens prior to those asserted by the other parties; and

6. That counsel for the United States shall within 20 days file a petition for the sale of the property in question.