In re SOUTH INDEPENDENCE, INC., d/b/a Lake Wright Texaco, Ein # 541373038, Debtor.

South Independence, Inc., d/b/a Lake Wright Texaco, Plaintiff,

v.

United States of America, Commonwealth of Virginia, and Selective Insurance of America, Inc., Defendants.

Bankruptcy No. 99–25384–S.
Adversary No. 00–2090–S.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Nov. 21, 2000.

W. Greer McCreedy, II, Norfolk, VA, for debtor.

Gregory S. Stefan, Norfolk, VA, Richard G. Jacobus, Centreville, VA, for the IRS.

Eric K. G. Fiske, for Commonwealth of Virginia.

Thomas Moore Lawson, Ann K. Crenshaw, Winchester, VA, for Selective Insurance Co. of America.

**Memorandum Opinion and Order**

STEPHEN C. ST. JOHN, Bankruptcy Judge.

This matter came upon the debtor's Complaint to Determine the Extent, Priority and Validity of Liens, and to Authorize Distribution. The parties involved have stipulated to most of the facts. With no major facts in contention, both parties filed summary judgment motions and memoranda in support thereof. After reviewing their briefs, the Court heard oral argument on the summary judgment motions and took the matter under advisement.

## FINDINGS OF FACT

The facts are not in dispute. On August 18, 1999, South Independence ("debtor") filed a voluntary petition for bankruptcy under Chapter 11. Following the debtor's bankruptcy filing, this Court authorized the debtor to sell property of the bankruptcy estate free and clear of liens pursuant to 11 U.S.C. § 363(b). After executing the sale and making certain payments pursuant to the Court's sale order, the net proceeds of the sale totaled $67,500, exclusive of closing costs and a sales commission. The debtor is prepared to distribute the net proceeds but has filed this Complaint to resolve its concern as to which

creditor has priority relative to the other creditors.

In the instant case, two creditors vie for priority—the Commonwealth of Virginia ("Commonwealth") and the Internal Revenue Service ("IRS"). The Commonwealth's claim relates to the debtor's fuel tax obligations. Pursuant to Virginia Code § 58.1–2132.2, the Commonwealth filed two memoranda of liens—the first on November 17, 1998 and the second on July 26, 1999—in the Circuit Court for the City of Virginia Beach to secure the fuel tax obligations in the amounts of $52,834.31 and $10,610.59 respectively.[1] The Com-

monwealth has accepted $25,707.06 from Selective Insurance Company of America, Inc. ("SIC"), as a compromise to the surety company's payment bond of $68,000, which previously secured the prepetition fuel tax obligation of the debtor.[2]

The IRS claim is also for unpaid taxes. Between October 31, 1997 and October 26, 1998, the IRS made numerous tax and penalty assessments for various periods against the debtor, totaling $30,289.26.[3] Since then, the amount of the IRS claim has fluctuated due to accrued interest, additional penalties, and payments credited against the claim.[4] In its motion for sum-

**1.** Between May 19, 1999 and July 28, 1999, the Commonwealth also filed memoranda of liens for various sales tax and employer withholding tax assessments against the debtor for various periods, totaling $5289.18. The Commonwealth, however, does not contend that this amount is entitled to priority over the IRS claims, as these liens were recorded after the IRS filed its notice of federal tax lien.

**2.** SIC is a party to this adversary proceeding. In its pleadings, SIC has adopted the position of the Commonwealth in all respects.

**3.**

**IRS Tax Assessments**

| For the tax period ending . . . | Assessment Date | Amount ($) |
| --- | --- | --- |
| September 30, 1997 | October 31, 1997 | 572.89 |
| | February 2, 1998 | 6365.39 |
| | February 2, 1998 | 636.54 |
| | February 2, 1998 | 127.31 |
| | February 2, 1998 | 162.68 |
| | March 9, 1998 | 318.27 |
| December 31, 1997 | January 31, 1998 | 486.86 |
| | April 13, 1998 | 5409.59 |
| | April 13, 1998 | 540.95 |
| | April 13, 1998 | 81.14 |
| | April 13, 1998 | 103.47 |
| | May 18, 1998 | 270.48 |
| March 31, 1998 | April 30, 1998 | 259.54 |
| | June 29, 1998 | 5767.50 |
| | June 29, 1998 | 576.74 |
| | June 29, 1998 | 57.68 |
| | June 29, 1998 | 79.77 |
| | August 3, 1998 | 288.37 |
| June 30, 1998 | July 31, 1998 | 302.62 |
| | September 21, 1998 | 6724.94 |
| | September 21, 1998 | 672.49 |
| | September 21, 1998 | 67.25 |
| | September 21, 1998 | 80.54 |
| | October 26, 1998 | 336.25 |
| TOTAL | | 30,289.26 |

**4.** At trial, the parties noted an apparent discrepancy in the amounts the IRS claimed in its notice of federal tax lien as compared with its proof of claim. In the notice of federal tax lien, the IRS stated that the amount secured was $30,353.48. In its proof of claim, howev-

mary judgment, and consistent with its proof of claim, the IRS has requested that $32,299.87 be distributed to satisfy its claim.[5]

With $67,500 in sale proceeds to distribute, the estate is unable to pay in full both the claims of the Commonwealth and the IRS. Accordingly, which creditor is entitled to distribution first will have a substantial effect on how much of each creditor's claim will be paid.

## CONCLUSIONS OF LAW

■ The ultimate issue in this case is which claim has priority. Federal law controls when the issue turns on the priority to be given to a federal lien. *See United States v. Sec. Trust & Sav. Bank,* 340 U.S. 47, 49, 71 S.Ct. 111, 95 L.Ed. 53 (1950); *Monica Fuel, Inc. v. IRS,* 56 F.3d 508, 511 n. 7 (3d Cir.1995); *In re Lehigh Valley Mills, Inc.,* 341 F.2d 398, 400 (3d Cir.1965). Under federal law, the priority of a claim is governed by the well-known principle that the "first in time is the first in right." *United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993); *accord United States v. Pioneer Am. Ins. Co.,* 374 U.S. 84, 87, 83 S.Ct. 1651, 10 L.Ed.2d 770 (1963); *United States v. City of New Britain,* 347 U.S. 81, 85, 74

S.Ct. 367, 98 L.Ed. 520 (1954); *Air Power, Inc. v. United States,* 741 F.2d 53, 55 (4th Cir.1984).[6] In the instant case, the priority between the claims of the IRS and the Commonwealth depends on which lien arose first. Furthermore, if the Commonwealth is within a certain class of protected creditors, the issue of notice may impact the priority dispute involved in this case. Both issues are examined below.

## I. FIRST IN TIME IS FIRST IN RIGHT

### A. *When the Liens Arose*

■ The relative priority of each lien in the instant case depends on which lien was first in time. *See McDermott,* 507 U.S. at 449, 113 S.Ct. 1526; *Pioneer Am. Ins.,* 374 U.S. at 87, 83 S.Ct. 1651; *New Britain,* 347 U.S. at 85, 74 S.Ct. 367; *Air Power,* 741 F.2d at 54; *Monica Fuel,* 56 F.3d at 511. The liens of the IRS arose under § 6321 of the Internal Revenue Code, which provides:

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition

er, the IRS stated that the amount secured was $32,299.87. To resolve the matter, the IRS submitted a supplemental affidavit in support of its motion for summary judgment. In the affidavit, Pamela Anderson, an "Advisor Reviewer" for the IRS, explained that the differing amounts reflected activity since the dates the taxes were assessed, as well as since the notice of federal tax lien was filed. Specifically, in addition to the tax assessments previously noted, the proof of claim amount reflects one payment of $4215, a dishonored check penalty of $15, failure-to-pay penalties of $3233.94, and further accrued interest totaling $2976.67. When these amounts are added to the amount of the original tax assessments, which totaled $30,289.26, *see supra* note 3, the combined total matches the IRS proof of claim-$32,299.87.

**5.** On December 28, 1998, in compliance with 26 U.S.C. § 6323(f) and Virginia Code § 55–142.1(C)(1), the IRS filed a notice of federal

tax lien with the Virginia State Corporation Commission. The parties dispute the legibility, or lack thereof, of the notice of federal tax lien. The parties further dispute who should bear the responsibility for such alleged illegibility. The Court makes no finding on these issues as this opinion makes those issues moot. As discussed in greater detail below, the notice of federal tax lien ultimately has no bearing on the outcome of this proceeding.

**6.** This principle goes back to the days of Chief Justice Marshall, who stated:

The principle is believed to be universal, that a prior lien gives a prior claim, which is entitled to prior satisfaction out of the subject it binds, unless the lien be intrinsically defective, or be displaced by some act of the party holding it, which shall postpone him in a Court of law or equity to a subsequent claimant.

*Rankin v. Scott,* 25 U.S. (12 Wheat) 177, 179, 6 L.Ed. 592 (1827).

thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6321 (West 2000). Such a lien arises at the time the IRS conducts the tax assessment. *See id.* § 6322 ("Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made ...."); *Monica Fuel,* 56 F.3d at 511 ("Under 26 U.S.C. §§ 6321 and 6322, federal tax liens arise when the underlying taxes are assessed."). As noted earlier, the IRS conducted numerous tax assessments, with the latest occurring on October 26, 1998. Applying § 6322, it is clear that all of the IRS liens arose no later than October 26, 1998.

▇▇▇ As for the Commonwealth's liens, the Supreme Court stated in *United States v. McDermott,* 507 U.S. 447, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993): "Our cases deem a competing state lien to be in existence for 'first in time' purposes only when it has been 'perfected' ...." *Id.* at 449, 113 S.Ct. 1526. The point at which a state lien is perfected depends "on the time it attached to the property in question and became choate." *New Britain,* 347 U.S. at 86, 74 S.Ct. 367, *quoted in United States v. Vermont,* 377 U.S. 351, 354, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964); *see Monica Fuel,* 56 F.3d at 511.[7] A lien may be choate "when there is nothing more to be done ... when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *New Britain,* 347 U.S. at 84, 74 S.Ct. 367, *quoted in Vermont,* 377 U.S. at 355, 84 S.Ct. 1267.

▇▇▇ In the instant case, the Commonwealth's liens arose under § 58.1–2132.2 of the Virginia Code, which provides:

If any taxes or fees, including penalties and interest, become delinquent or are past due, the Commissioner may file a memorandum of lien .... Such memorandum shall be recorded in the judgment docket book and shall have the effect of a judgment in favor of the Commonwealth....

Va.Code Ann. § 58.1–2132.2 (Michie 2000). At the time the memorandum of lien is filed, the lienor and the property subject to the lien presumably are identified. Moreover, the memorandum of lien should establish the amount of the lien. Consequently, the Commonwealth's liens became choate at the time it filed the two memoranda of liens-specifically, the Commonwealth's liens became choate on November 17, 1998, and July 26, 1999 respectively. Therefore, the earliest lien that arose in favor of the Commonwealth occurred on November 17, 1998.

### B.  The IRS Liens Are First in Time

The review as to when each lien arose in the present case reveals that all of the IRS liens arose prior to the Commonwealth's two liens. The latest IRS lien arose October 26, 1998, whereas the first Commonwealth lien arose on November 17, 1998–nearly a month after the last IRS lien. Applying the principle of first in time, first in right, it is clear that the IRS liens are first in time and thus first in right. The Commonwealth, however, asserts that its liens are first in time because the IRS did not file its notice of lien until December 28, 1998. Even then, the Commonwealth argues, the notice was illegible and therefore ineffective. The relevance of the IRS notice of federal tax lien depends on whether the Commonwealth is a protected class under the Internal Revenue Code.

### II.  JUDGMENT LIEN CREDITOR

▇▇▇ The Commonwealth argues that it is a judgment lien creditor and therefore must have notice of a federal tax lien

---

7. As the Supreme Court noted in *Vermont,* "[t]he requirement that a competing lien must be choate in order to take priority over a later federal tax lien stems from the decision in *United States v. Security Trust & Savings Bank,* 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 [1950]." *Vermont,* 377 U.S. at 355, 84 S.Ct. 1267.

before such lien may trump the Commonwealth's lien. As noted above, an IRS lien arises at the time the tax is assessed. *See* 26 U.S.C. §§ 6321, 6322 (West 2000). To be valid against certain types of creditors, however, the IRS must file a notice of federal tax lien. Congress saw fit to protect certain types of creditors by legislating that "[t]he lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary." *Id.* § 6323(a); *see also Air Power, Inc. v. United States,* 741 F.2d 53, 55 (4th Cir.1984) ("Congress in the last fifty years has chosen to extend special protection to certain classes of creditors whose interests are perfected and specific before they have notice of outstanding federal tax liens.").

A judgment lien creditor is defined in the IRS regulations:

> [A] person who has obtained a valid judgment, in a court of record and of competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money. In the case of a judgment for the recovery of a certain sum of money, a judgment lien creditor is a person who has perfected a lien under the judgment on the property involved.

26 C.F.R. §§ 301.6323(h)–1(g) (2000). The IRS contends that the definition of a judgment lien creditor requires that the lienor have obtained the judgment through litigation in a court of law. Conversely, the Commonwealth argues that under state law, its lien is given the effect of a judgment in all respects and therefore makes the Commonwealth a judgment lien creditor for purposes of Internal Revenue Code § 6323.

On its face, Virginia Code § 58.1–2132.2 attempts to create a judgment lien once the lienor files a memorandum of lien. *See* Va.Code Ann. § 58.1–2132.2 (Michie 2000).

The state statute, however, is not determinative of whether it is a judgment, because "federal law governs the actual legal effect of the judgment for tax priority purposes." *Air Power,* 741 F.2d at 55 n. 2 (4th Cir. 1984) (citing *Hartford Provision Co. v. United States,* 579 F.2d 7, 9 (2d Cir.1978)). In *Air Power,* the Fourth Circuit Court of Appeals held that "whether a judgment issues from a 'court of record' for purposes of section 6323 priority under the Internal Revenue Code is a question of federal law . . . ." *Id.* at 54. The *Air Power* court based its holding on the need for uniformity in defining "judgment creditor" as expressed in *United States v. Gilbert Associates,* 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953):

> A cardinal principle of Congress in its tax scheme is uniformity, as far as may be. Therefore, a "judgment creditor" should have the same application in all the states. In this instance, we think Congress used the words "judgment creditor" in § 3672 [now § 6323] in the usual conventional sense of a judgment of a court of record, since all states have such courts. We do not think Congress had in mind the action of taxing authorities who may be acting judicially as in New Hampshire and some other states, where the end result is something "in the nature of a judgment", while in other states the taxing authorities act quasi-judicially and are considered administrative bodies.

*Id.* at 364, 73 S.Ct. 701 (footnotes omitted), *quoted in Air Power,* 741 F.2d at 56. Likewise, in the instant case, that a state statute declares that it "shall have the effect of a judgment," Va.Code Ann. § 58.1–2132.2, is not enough to render the state a judgment lien creditor for the purpose of § 6323 of the Internal Revenue Code. *See, e.g., Brown v. Maryland,* 699 F.Supp. 1149, 1153 (D.Md.1987) ("Although, under Maryland law the recording of a notice of a tax lien may be similar to

or in the nature of a judgment, this is not sufficient under the *Gilbert* case."). Rather, the creditor must meet the criteria enumerated under the Internal Revenue Code to qualify as a judgment lien creditor. In the instant case, the Commonwealth does not qualify as a judgment lien creditor.

The federal regulations note that a judgment lien creditor is one who has obtained a judgment in a "court of record." 26 CFR §§ 301.6323(h)–1(g) (2000). The regulations go on to state that "[t]he term 'judgment' does not include the determination of a quasi-judicial body or of an individual acting in a quasi-judicial capacity ...." *Id.* These comments make it clear that anything less than a judgment in a court of record with judicial authority will not suffice. A state legislature cannot overcome this barrier by simply declaring its lien to be a judgment. The Commonwealth's lien in this matter was not born from a court of record or any sort of judicial authority. Consequently, the Commonwealth is not a judgment lien creditor and cannot enjoy such protection. *Cf. Foust v. Foust,* No. IP 96–0196–C–T G, 1997 WL 1037872, at *7 (S.D.Ind. July 9, 1997) ("Therefore, even though the [Indiana Department of Revenue ("IDR")] has a judgment lien under Indiana law, this lien does not qualify the IDR as a 'judgment lien creditor' under federal law that is entitled to the additional protection of section 6323(a). The IDR does not have a judgment granted by a court of record, and would need such a judgment before the IRS filed its notice ... in order to have priority over the federal tax lien."). Without the status of judgment lien creditor, the timing, as well as the illegibility of the notice of federal tax lien becomes irrelevant. The federal tax liens arose when they were assessed, and as noted above, were first in time relative to the Commonwealth's liens. Under the principle of first in time, first in right, the IRS liens take priority over the Commonwealth's liens.

### III. MONICA FUEL, INC. V. INTERNAL REVENUE SERVICE

Finally, the Court must address the case that the Commonwealth argues should control the outcome. In *Monica Fuel, Inc. v. Internal Revenue Service,* 56 F.3d 508 (3d Cir.1995), the Third Circuit Court of Appeals faced an issue similar to the one faced by this Court today-namely the relative priority of a § 6321 lien versus a state fuels tax lien. *See id.* at 508–09. The state statute in *Monica Fuel* is substantially similar to the one at issue today. In *Monica Fuel,* the statute created a lien for fuel taxes owed to the state. *See id.* at 509. By issuing either a certificate of debt or a warrant of execution, the lien would be "given the same force and effect as any entry of a docketed judgment ...." *Id.* In holding that the state tax liens "were choate and, therefore, entitled to priority over the liens of the IRS," *id.* at 513, the court noted that the "liens were 'given the force of a judgment' upon assessment." *Id.* (quoting *United States v. Vermont,* 377 U.S. 351, 359, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964)).

The holding in *Monica Fuel* is notable as much for its holding as for what it did not hold. The court noted that on reargument the district court "concluded that ... the Division did not acquire judgment lien creditor status because a certificate of debt 'does not qualify as a "valid judgment, in a court of record and of competent jurisdiction" as specifically required by 26 C.F.R. § 301.6323(h)–1(g).'" *Id.* at 510 n. 5 (quoting *Monica Fuel, Inc. v. IRS,* No. 91–748, at 7 (D.N.J. May 10, 1994)). On appeal, the Division did not contest this ruling and therefore the Third Circuit in *Monica Fuel* did not have to address whether the Division was a judgment lien creditor.

Yet this is precisely the issue before this Court. In *Monica Fuel,* whether the Division was a judgment lien creditor was not outcome determinative because, as the court found, the Division was first in time

with regard to when the liens arose.[8] In the instant case, the Commonwealth's first lien arose nearly a month after the IRS made its last tax assessment. Having lost this race, the Commonwealth had to pin its hopes on protection as a judgment lien creditor. As noted above, this attempt has been proven futile in that the Commonwealth is not a judgment lien creditor.

### IV.

The sole issue in this case is which liens have priority: the Commonwealth's liens or the IRS liens. With "first in time, first in right" as the guiding principle, the dates that each lien arose are critical. Under state law, the Commonwealth's liens arose when the Commonwealth filed the two memoranda of liens. Conversely, under federal law, the IRS liens arose at the time the IRS assessed the fuel taxes. Applying this to the undisputed facts, it is clear that all of the IRS liens arose prior to the Commonwealth's liens.

To avoid the consequences of perfecting its lien subsequent to the IRS tax assessments, the Commonwealth seeks protection as a judgment lien creditor. A judgment lien creditor is not bound by the date of tax assessment for purposes of priority, but rather the date of when the notice of federal tax lien was filed controls. Who is a "judgment lien creditor," however, is governed under federal law. The Commonwealth does not fit into this definition despite the state statute giving the lien the effect of a judgment, because the lien was not obtained in a court of a record or from any type of judicial authority.

Without the status of a judgment lien creditor, the first lien in time must prevail. Accordingly, in light of the fact that the IRS liens preceded the Commonwealth's liens, the Court finds that the IRS liens have priority over the Commonwealth's liens. The Court, therefore, orders that the amount of $67,500 being held in trust be distributed first to the IRS in satisfaction of its claim for $32,299.87, with the remainder to be applied to the Commonwealth's liens.

IT IS SO ORDERED.

---

**8.** As in our case, the court in *Monica Fuel* faced several liens. In *Monica Fuel,* the IRS made seven tax assessments between September 18, 1989 and June 4, 1990. The *Monica Fuel* court concluded that on August 30, 1989–nearly three weeks prior to the first IRS assessments the state tax liens became sufficiently choate under the *New Britain* test and therefore were first in time and first in right relative to the IRS liens. *See id.* at 512.