**NORIEGA & ALEXANDER, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendant.**

**No. CV–F–93–5160 REC.**

United States District Court, E.D. California.

May 17, 1994.

---

Craig Arthur Edmonston, Noriega and Alexander, Bakersfield, CA.

Robert M. Twiss, U.S. Atty., Sacramento, CA.

Diana P. Nowezki, U.S. Dept. of Justice Trial Atty., Tax Div., Washington, DC.

William Landro Carter, California State Atty. Gen., Sacramento, CA.

Brett L. Price, Bakersfield, CA.

## ORDER RE UNITED STATES' MOTION FOR SUMMARY JUDGMENT

COYLE, Chief Judge.

On April 18, 1994, the court conducted further oral argument in connection with the United States' Motion for Summary Judgment. The court had heard the motion on January 31, 1994 and ordered additional briefing on February 8, 1994.[1]

Upon due consideration of the written and oral arguments of the parties and the record herein, the court grants this motion for the reasons set forth herein.

This is an interpleader action brought by the law firm, Noriega & Alexander, against the United States acting on behalf of the Internal Revenue Service and the State of California acting on behalf of the Franchise Tax Board. The interpleaded fund is approximately $188,249.97. This fund was interpleaded to determine the priority of competing tax claims asserted by the IRS and the FTB.

The United States has moved for summary judgment in its favor with respect to this interpleaded fund.

### A. Background.

Noriega & Alexander represented Albert and Joann Chancellor in civil action no. 192166 in the Kern County Superior Court. On January 28, 1991, a judgment in favor of the Chancellors was entered. An appeal was filed. On July 5, 1991, a Stipulation re Set-

tlement and General Release was filed wherein Wells Fargo Bank paid $440,000.00 to Noriega & Alexander on behalf of the Chancellors. Pursuant to the terms of the Settlement and other documents, $121,240.00 was paid to the Chancellors' bankruptcy estate and $318,760.00 was paid into a trust account established by Noriega & Alexander. Noriega & Alexander was paid $197,520.00 of this fund as compensation for its services in litigating the lawsuit. The remaining balance of $121,240.00 plus interest is the subject of this interpleader action.[2] The Stipulation re Settlement and General Release further provided in pertinent part:

> 4. ... Any and all liens, interests, or rights which may exist in connection with this lawsuit, any cause of action therein, or the proceeds from any settlement or judgment therefrom, shall attach to the sums distributed to Noriega and Alexander in the same priority, manner, and amount as said liens, interests, or rights attached or existed in relation to the lawsuit, any cause of action therein, or any settlement, judgment, or proceeds therefrom....

The FTB executed a Consent of Franchise Tax Board to Settlement and Distribution.

As noted, the Chancellors are in bankruptcy. According to the pleadings filed by the parties in connection with the joint status report requested by the court, an Order Approving Trustee's Final Report and Order for Payment of Dividends was filed on August 3, 1993. This order reflects that the FTB had a zero claim balance and was entitled to no further payments from the estate. The order further reflects that the IRS had a claim balance of $93,635.11 and was entitled to payment in that amount. According to the Cash Receipts and Disbursements Record

---

1. On February 8, 1994, the court issued an Order for Further Briefing in which the court ordered the Franchise Tax Board to submit a brief discussing whether or not the Chancellors' rights with respect to the litigation in the Kern County Superior Court, Civil Action No. 192166 constitute a chose in action which is subject to levy by the Internal Revenue Service. The court requested this briefing it took issue with the FTB's assertion that an IRS Notice of Levy filed with Noriega & Alexander was legally ineffective to levy the proceeds of settlement because a future judgment was no different than future wages. In addition, the court ordered the parties to file a

joint status report setting forth the status of the bankruptcy proceedings, including the dollar amount of any funds which are available for distribution to the Internal Revenue Service in satisfaction of its lien, as of the current date.

2. The court has gleaned these figures from letters and other documents attached as exhibits to the FTB's opposition to this motion. Although the court is not completely sure that each is accurate in amount, for purposes of this order, the figures set forth above are adequate to describe the course of events.

submitted by the parties, the following disbursements were made by the estate to the IRS and to the FTB:

| Date | Agency | Amount |
|---|---|---|
| 12/13/88 | IRS | $325,855.00 |
| 12/13/88 | FTB | 157,665.04 |
| 6/15/92 | IRS | 7,362.00 |
| 6/15/92 | FTB | 2,969.00 |
| 7/26/93 | IRS | 93,635.11 |

The IRS is entitled to no further distributions from the estate.

According to the Certificate of Assessments and Payments submitted with the United States' motion, the Chancellors were assessed $330,787.00 plus interest and penalties on April 15, 1985. The first notice with respect to this assessment was issued on May 20, 1985. Other assessments were made between May 20, 1985 and January 27, 1989. Notices of Federal Tax Lien with respect to these assessments were filed with the Kern County Recorder's Office on various dates between December 22, 1988 and May 16, 1989. A Notice of Levy was issued with respect to these assessments on May 31, 1989 to William L. Alexander of the law firm, Noriega and Alexander. Receipt was acknowledged on June 13, 1989. The Notice of Levy states in pertinent part as follows:

> The purpose of this Notice of Levy is to attach to any monies or other property you may recover on behalf of the Chancellors, in particular from their lawsuit against American National Bank. Copies of our Notices of Federal Tax Lien are attached to provide you with 'actual notice' and to make the effect of this levy continuous.

According to the Certificate of Tax Due and Delinquency executed on January 11, 1994 and attached to the FTB's opposition to this motion, the Chancellors' owe the FTB the amount of $123,409.01 as of January 11, 1994 for the taxable years 1984 and 1985. The Certificate of Tax Due and Delinquency attests that the liens for the taxable year 1984 were created and enforceable on June 3,

1985 and July 3, 1989 pursuant to Revenue & Taxation Code § 19221(1)(4) [sic].[3] The Certificates of Tax Due and Delinquency were filed with Kern County on December 15, 1989. On April 23, 1990, the FTB filed a Notice of Lien in the Chancellors civil action in the Kern County Superior Court.

### B. *Priority.*

■ Pursuant to 26 U.S.C. §§ 6321 and 6322, a federal tax lien arises upon the property and rights to property of a delinquent taxpayer automatically upon assessment. The lien attaches to the taxpayer's property or rights to property the taxpayer holds or subsequently acquires and continues until the lien has been satisfied or becomes unenforceable for lapse of time under 26 U.S.C. § 6502. A federal tax lien is effective upon assessment against all persons, even in the absence of recordation of the lien. *Don King Productions, Inc. v. Thomas,* 945 F.2d 529, 533 (2d Cir.1991).[4] Federal law determines the priority of competing liens. *United States v. New Britain,* 347 U.S. 81, 86–87, 74 S.Ct. 367, 370–371, 98 L.Ed. 520 (1954). Generally, in determining priority under federal law, the rule of "first in time, first in right" applies. *id.* Under that rule a federal tax lien takes priority over competing liens unless the competing lien was choate, or fully established, prior to the attachment of the federal lien. *Id.* Not only does a lienor's interest have to be first chronologically, but the interest must be choate to defeat a federal tax lien. A choate lien is one in which the identity of the lienor, the property subject to the lien and the amount of the lien are established. *Id.* at 84, 74 S.Ct. at 369. A lien that is "choate" has been described as a lien that is "specific and perfected" and for which "nothing more [need] be done." *United States v. Equitable Life Assurance Society,* 384 U.S. 323, 327–328, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966). A lien cannot arise before the state takes any administra-

---

**3.** Revenue & Taxation Code § 19221 was not enacted until 1993 and is stated to be effective on June 16, 1993 and operative on January 1, 1994. Therefore, the attestation made by the FTB is incorrect. The appropriate statute should have been stated as Revenue & Taxation Code § 18881 which appears to be essentially identical

to Section 19221. Therefore, the error appears harmless.

**4.** 26 U.S.C. § 6323(a) lists persons who are protected against unrecorded federal tax liens. However, the FTB is not included in the categories listed.

tive steps to establish the lien. *In re Priest,* 712 F.2d 1326 (9th Cir.1983).

■ The parties dispute when a lien becomes choate under California law. Citing *United States v. Zuetell,* 138 F.Supp. 857 (S.D.Cal.1956), the United States argues that a lien for California income taxes does not arise until the state files a Notice of State Tax Lien. The FTB, referring the court to *In re Priest, supra,* argues that the lien becomes choate when the FTB makes an assessment.

In *Zuetell,* the district court held that a California lien for State income taxes which arose by recordation was not the lien of a "judgment creditor" under the Internal Revenue Code and was therefore not prior to a Federal tax lien. Thus, the case does not, as argued by the IRS, hold that a lien for California income taxes does not arise until the state files a Notice of State Tax Lien. However, contrary to the FTB's representations, *In re Priest* does not hold that a California tax lien becomes choate when the tax is assessed. But *F.T.C. v. Crittenden,* 823 F.Supp. 705, 708 (C.D.Cal.1993), *aff'd on other grounds,* 19 F.3d 26 (9th Cir.1994), suggests that the assessment date is the controlling date. In the court's opinion, the date of assessment is the appropriate date just as is the case under federal law. The date of assessment appears to satisfy all of the requirements to be choate.

■ In opposing this portion of the motion, the FTB argues that there are genuine issues of material fact concerning the priority of the IRS lien which preclude summary judgment. The court does not agree.

The Certificate of Assessment submitted with the motion makes clear that the initial assessment for the taxable year 1984 was made on April 15, 1985. The first notice was issued on May 20, 1985 and it is this latter date which is shown as the date of assessment on the various Notices of Lien and the Notice of Levy. Although the FTB argues that this discrepancy raises an issue of fact precluding summary judgment, an issue of fact must be material to preclude summary judgment. Whether the date of assessment or the date the first notice was issued is used by the court, the IRS lien with respect to the 1984 tax year precedes the lien acquired by the FTB with respect to the taxable year 1984 on June 3, 1985.[5]

### C. *Effect of Levy—Statement of Procedures.*

■ The FTB further opposes this motion for summary judgment, contending that the Notice of Levy filed by the IRS with Noriega & Alexander was legally ineffective to levy the proceeds of the settlement.

In the FTB's supplemental brief concerning choses in action, the FTB argues that the IRS levy on Noriega & Alexander was ineffective because Noriega & Alexander possessed no property or rights to property of the Chancellors at the time the levy was made. In this regard, the FTB points out that the levy was on "any monies or other property you may recover on behalf of the Chancellors, in particular from their lawsuit against American National Bank" and not on any property of the Chancellors which Noriega & Alexander presently possessed. The FTB concedes that the levy would have been effective if the Chancellors had assigned their chose in action to Noriega & Alexander. However, noting that this is a motion for summary judgment, the FTB points out that there is no evidence of any such assignment.

■ There is no question that a levy reaches only property in the possession of the person levied upon at the time the levy is made and does not attach to after-acquired property. *Merten Law of Federal Income*

---

5. The FTB had argued in its initial opposition that the IRS is not entitled to summary judgment with respect to the priority of any of its tax liens after June 3, 1984. However, this argument no longer has any relevance given that their is nothing in the bankruptcy estate from which the IRS can satisfy its liens.

The Ex Parte Status Report filed by counsel for the United States represents that the outstanding balance owed by the Chancellors for the taxable year 1984 after application of the amounts received from the Bankruptcy Court is $239,-640.96. Because this remaining balance exceeds the interpleaded fund and because the IRS' lien for the taxable year 1984 has priority over the lien of the FTB, there is no need to determine the relative priority of the assessments for subsequent taxable years.

*Tax* § 54A.50. I.R.S. Regulation § 301.-6331–1(a)(1) explains in pertinent part:

> Levy may be made by serving a notice of levy on any person in possession of, or obligated with respect to, property or rights to property subject to levy, including receivables, bank accounts, evidences of debts, securities, and salaries, wages, commissions, or other compensation. Except as provided in § 301.6331–2(c) with regard to a levy on salary or wages, a levy extends only to property possessed and obligations which exist at the time of the levy. Obligations exist when the liability of the obligor is fixed and determinable although the right to receive payment thereof may be deferred until a later date. For example, if on the first day of the month a delinquent taxpayer sold personal property subject to an agreement that the buyer remit the purchase price on the last day of the month, a levy made on the buyer on the 10th day of the month would reach the amount due on the sale, although the buyer need not satisfy the levy by paying over the amount to the district director until the last day of the month. Similarly, a levy only reaches property in the possession of the person levied upon at the time the levy is made. For example, a levy made on a bank with respect to the account of a delinquent taxpayer is satisfied if the bank surrenders the amount of the taxpayer's balance at the time the levy is made. The levy has no effect upon any subsequent deposit made in the bank by the taxpayer. Subsequent deposits may be reached only by a subsequent levy on the bank.

It appears arguable from this regulation that the FTB's position concerning the efficacy of the IRS Notice of Levy is correct. However, even if the court were to conclude that the IRS's Notice of Levy issued to Noriega & Alexander was legally ineffective to seize the settlement proceeds subsequently received by Noriega & Alexander on behalf of the Chancellors, it appears that the United States still is entitled to the funds the subject of this interpleader. This conclusion is based on the court's reading of the Supreme Court's decision in *United States v. McDer-*

*mott,* —— U.S. ——, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993).

In *McDermott,* by statute a federal tax lien could not be valid against any judgment lien creditor until notice of the federal lien had been filed. Before the federal tax lien was filed with the County Recorder's Office, a bank docketed a state-court judgement it had won against the McDermotts, thereby creating a state law judgment lien on all of the McDermotts existing or after-acquired real property in the county. After both liens were filed, the McDermotts acquired certain real property in the county and brought an interpleader action. The Supreme Court held that a federal tax lien filed before a delinquent taxpayer acquires real property must be given priority in that property over a private creditor's previously filed judgment lien. Priority for purposes of federal law is governed by the "first in time, first in right" principle. A state lien that competes with a federal lien is deemed to be in existence for "first in time" purposes only when it has been "perfected" in the sense that "the property subject to the lien is established." Because the bank's judgment lien did not actually attach to the property at issue until the McDermotts acquired rights to that property, which occurred *after* the United States had filed its tax lien, the bank's lien was not perfected before the federal filing. The Supreme Court further held that it was irrelevant that the federal lien similarly did not attach and become perfected until the McDermotts acquired the property since such a lien is ordinarily dated for purposes of "first in time" priority against competing interests from the time of its filing.

The FTB argues that *McDermott* is not relevant here because there is no issue of "after-acquired property." The FTB takes the position that "if the United States levied on the Chancellors' chose in action, the levy must have been on property possessed at the time by plaintiff and not after-acquired property ..." and, therefore, the *McDermott* analysis is unwarranted. However, the FTB then argues:

> Nevertheless, the United States' levy on plaintiff was not sufficient to constitute a levy on the Chancellors' chose in action

since it did not purport to levy on the chose in action and, even if it had purported to do so, plaintiff was not in possession of the chose in action under California law which governs the determination of property interests.

■ The court does not agree that the United States did not purport to levy on the chose in action. That is exactly what the IRS attempted to do. The question is whether Noriega & Alexander had any interest in that chose of action to be levied upon. If it is established that an assignment of the chose in action was made, the FTB is not entitled to the judgment proceeds because the IRS lien is prior to the FTB lien. However, even if Noriega & Alexander did not have possession of the chose in action because of the absence of an assignment, the minute that the law firm came into possession of the judgment proceeds, Noriega & Alexander did possess property of the Chancellors and *McDermott* is applicable. Therefore, the fact that the Notice of Levy issued to Noriega & Alexander may not have been effective to seize the remaining settlement proceeds does not entitle the FTB to those proceeds in advance of the IRS when those proceeds came into the hands of Noriega & Alexander.

D. *Attorneys' Fees.*

■ Noriega & Alexander oppose the United States' Motion for Summary Judgment, contending that, although it has no position with respect to the issue of entitlement to the interpleaded fund as between the IRS and the FTB, the IRS is not entitled to priority over Noriega & Alexander with respect to their claim for attorneys' fees incurred in connection with this interpleader action from the interpleaded fund.

In so arguing, Noriega & Alexander presents a letter from Joseph Noriega to the IRS in which Noriega & Alexander offered to pay to the IRS the monies held by Noriega & Alexander as a result of the settlement of the litigation involving the Chancellors if the IRS would agree to indemnify Joseph Noriega, Noriega & Alexander, and the Chancellors from any liability to the State of California. The letter further advised the IRS that in the absence of such an indemnification agreement, Noriega & Alexander would commence an interpleader action in federal court.

Noriega & Alexander cite no authority authorizing an award of attorneys' fees to it for bringing this interpleader action in advance of payment of the fund to the IRS in satisfaction of a federal tax lien. In *Abex Corporation v. Ski's Enterprises, Inc.,* 748 F.2d 513 (9th Cir.1984), the Ninth Circuit joined the Eighth and Tenth Circuits in holding that the Equal Access to Justice Act, 28 U.S.C. § 2412, does not allow an award of fees under such circumstances:

> Generally, courts have discretion to award attorney fees to a disinterested stakeholder in an interpleader action ... Courts have clearly held, however, that the existence of prior federal tax liens gives the government a statutory priority over the interpleader plaintiff's ability to diminish the fund by an award of fees ... Under sections 6321 and 6322 of the Internal Revenue Code, failure to pay taxes creates a lien on the taxpayer's real and personal property in favor of the government and the lien remains in force until the amount 'is satisfied or becomes unenforceable by reason of lapse of time.' ... According to the government, these statutes protect the interpleader fund from attorney fee reductions prior to satisfaction of the lien. Abex contends that the EAJA abrogates the government's tax lien priority to allow an award of fees to the interpleader plaintiff. Under the EAJA, 28 U.S.C. 2412, the United States is liable to a prevailing party for reasonable attorney fees in civil actions to the same extent any other party would be liable for fees under the common law or under a statute authorizing fees unless such liability is expressly prohibited by statute. Abex argues that the tax lien statutes do not 'expressly prohibit' an award of attorney fees. Thus, according to Abex, Section 2412(b) allows the award of fees consistent with the general rule which allows an interpleader plaintiff to collect fees.

> The Eighth and Tenth Circuits have already faced this issue. Both have held that the governmental priority established

under the tax lien statutes precludes an award of fees to the plaintiff stakeholder from an interpleader fund when such an award would deplete the fund prior to total satisfaction of the lien. In *Millers Mutual Insurance Assn. of Illinois v. Wassall*, 738 F.2d 302 (8th Cir.1984), the plaintiff stakeholder received $1500 in attorney fees over the government's claim that no such award could be made if it reduced the amount recovered under prior tax liens. The Eighth Circuit reversed the award, concluding that the EAJA did not abrogate the statutory tax lien priority. 'There is nothing in the statute or the legislative history of the EAJA to indicate that Congress intended to override the priority of the United States to interpleaded funds under prior federal tax liens.' ... In *Chevron U.S.A. v. May Oilfield Services, Inc.*, 739 F.2d 498 (10th Cir.1984), the Tenth Circuit reversed an award of attorney fees to an interpleader plaintiff, concluding that sections 6321 and 6322 of the Internal Revenue Code expressly prohibited an award of attorney fees under the EAJA....

We find the reasoning of the Eighth and Tenth Circuits persuasive. The tax lien statutes establish a clear priority to interpleader funds in favor of the government. The passage of the EAJA, while abrogating governmental sovereign immunity against claims for attorney fees, does not dispense with the tax lien priority created under the tax lien statutes....

748 F.2d at 516–517.

Noriega & Alexander argue that *Abex* notwithstanding, this court still has the authority and discretion "to do equity in the instant action." However, in the absence of any other specific authority for an award of fees in this circumstance, the court must deny this request pursuant to *Abex*.

ACCORDINGLY, IT IS ORDERED that the United States' Motion for Summary Judgment is granted.