

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-2-1995

# Monica Fuel v IRS

Precedential or Non-Precedential:

Docket 94-5406

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Monica Fuel v IRS" (1995). *1995 Decisions.* Paper 147.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/147

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-5406
_____


MONICA FUEL, INC.

Appellee,

vs.

INTERNAL REVENUE SERVICE, DEPARTMENT OF
TREASURY, UNITED STATES OF AMERICA; STATE OF
NEW JERSEY, DEPARTMENT OF TREASURY, DIVISION
OF TAXATION

        Division of Taxation, Department of the
        Treasury, State of New Jersey,

Appellant.


_____



APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

(D.C. Civil No. 91-cv-00748)

_____



ARGUED JANUARY 24, 1995

BEFORE:  SLOVITER, Chief Judge, LEWIS and WEIS, Circuit Judges.

(Filed   June 2, 1995)

_____

Martin L. Wheelwright
Kevin M. Schatz (ARGUED)
Office of Attorney General of New Jersey
Richard J. Hughes Justice Complex
CN 112
Trenton, NJ  08625

       Attorneys for Appellant


David A. Kasen
Kasen, Kasen & Braverman
1874 East Marlton Pike
Post Office Box 4130, Suite 3
Cherry Hill, NJ  08034

       Attorney for Appellee, Monica Fuel, Inc.


Gary R. Allen
William S. Estabrook
David A. Shuster (ARGUED)
Pamela C. Berry
United States Department of Justice
Tax Division
Post Office Box 502
Washington, DC  20044

       Attorneys for Appellee, Internal Revenue
       Service, Department of the Treasury,
       United States of America

_____

OPINION OF THE COURT
_____


LEWIS, Circuit Judge.

This case presents a single issue of law:  the relative priority of Internal Revenue Service ("IRS") liens, which arise upon assessment under 26 U.S.C. §§ 6321 and 6322,[1] versus New

_____

[1].  26 U.S.C. § 6321 provides:

Jersey motor fuels tax liens, which arise under New Jersey's State Tax Uniform Procedure Law. At summary judgment, the United States District Court for the District of New Jersey found the federal liens to be superior. Because we believe the state liens were choate before the liens of the IRS arose and were, therefore, entitled to priority, we will reverse the district court's judgment.

I.

The material facts of this case are generally undisputed. The necessary factual background concerns New Jersey's uniform procedures for assessing and collecting taxes and the State of New Jersey, Division of Taxation's ("Division") activities with respect to Monica Fuel, Inc. ("Monica Fuel").

(..continued)

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

26 U.S.C. § 6322 provides:

> Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes enforceable by reason of lapse of time.

A.

The state liens involved in this case arose under N.J. Stat. Ann. § 54:49-1, which provides in pertinent part:

> The taxes fees, interest and penalties imposed by any such State tax law . . . from the time the same shall be due, shall be a personal debt of the taxpayer to the State, recoverable in any court of competent jurisdiction in an action in debt in the name of the State. Such debt, whether sued upon or not, shall be a lien on all the property of the debtor except as against an innocent purchaser for value in the usual course of business and without notice thereof, and except as may be provided to the contrary in any other law . . . .

The Division is authorized to make an assessment after a report is filed and it is determined that there is a deficiency in payment. Notice of such a deficiency assessment is then given to the taxpayer and demand for payment is made. N.J. Stat. Ann. § 54:49-6. The taxpayer must remit to the Division the assessed amount within fifteen days after the notice and demand are mailed. N.J. Stat. Ann. § 54:49-8. Non-payment within the 15-day period results in the imposition of an additional penalty of five percent. N.J. Stat. Ann. § 54:49-9.

The Division is not limited to demand and imposition of penalties as the only tools for effectuating collection of unpaid taxes. The Division may, as an alternative remedy, issue a certificate of debt to the Clerk of the New Jersey Superior Court. The clerk immediately enters upon the record of docketed judgments the name and business address of the debtor, the certified amount of the debt and the name of the tax. N.J. Stat.

Ann. § 54:49-12. The entries are given the same force and effect as any entry of a docketed judgment, and provide the Division with all of the remedies available for recovery of a judgment in action. We note that this alternative remedy creates no additional rights nor additional liabilities; rather "[i]t is a device for collecting taxes[.]" C.J. Kowasaki, Inc. v. New Jersey, 13 N.J. Tax 160, 168-169 (N.J. Tax Ct. 1993).

The New Jersey statute provides an additional remedy to enforce collection of taxes. The Division may issue a warrant of execution to the sheriff of any county who, in turn, files the warrant with the county clerk.[2] The clerk then enters in the judgment docket the name of the taxpayer and the amount the taxpayer owes to the State. As with the certificate of debt, the warrant does not create the lien; instead the warrant provides a procedural tool for enforcing a judgment. In re Blease v. New Jersey, 605 F.2d 97, 98 (3d Cir. 1979).

B.

On March 23, 1989, the Division made an assessment of $76,554.19 against Monica Fuel, a Williamstown, New Jersey corporation, engaged in the business of retail fuel oil distribution, for unpaid motor fuels taxes. On August 30, 1989, the Division assessed against Monica Fuel an additional $2,125.61, bringing the total state assessments to $78,679.70.

---

[2]. The Division may also issue a warrant to any Division employee who may execute the warrant with all the powers of a sheriff. N.J. Stat. Ann. § 54:49-13(a). In this case the Division exercised this option.

Thereafter, between September 18, 1989, and June 4, 1990, the IRS made seven separate assessments against Monica Fuel for unpaid federal excise and employment taxes, totalling $68,288.37.[3] On February 5, 1990, the Division filed a certificate of debt with the clerk of the New Jersey Superior Court, who entered judgment on the record of docketed judgments on February 14, 1990. Nine days later, on February 23, 1990, the Division issued a warrant of execution on the personalty of Monica Fuel which was available for payment of the taxes due. This amounted to $60,000 which Monica Fuel expected to receive from the bulk sale of its business assets to Star Oil Company, Inc. ("Star Oil").[4]

---

[3]. The amounts and dates of the IRS assessments are as follows:

| Assessment Date | Amount |
|---|---|
| 09/18/89 | $ 9,253.99 |
| 09/25/89 | 40,365.94 |
| 12/04/89 | 8,472.31 |
| 12/18/89 | 0.00 |
| 03/19/90 | 264.20 |
| 03/19/90 | 7,570.84 |
| 06/04/90 | 2,361.09 |
| Total | $68,288.37 |

[4]. On February 7, 1990, Star Oil, pursuant to N.J. Stat. Ann. § 54:32-22(c) (West 1986), filed a Notification of Sale, Transfer or Assignment in Bulk with the Division indicating that Star Oil would be purchasing some of Monica Fuel's business assets. The sale was completed in mid-June. At or about that time, Monica Fuel, Star Oil, the IRS and the Division executed an escrow agreement whereby the proceeds from the sale were to be placed in escrow for the purpose of satisfying the claim of either the IRS or the Division or both. The agreement further provided that (1) the funds were to be interpleaded within 90 days absent a resolution regarding the distribution of the funds between the IRS and the Division; and (2) the funds were to be disbursed in

C.

On October 26, 1990, Monica Fuel instituted this interpleader action in the Superior Court of New Jersey. The IRS then removed the action to the district court. On cross-motions for summary judgment, the district court concluded that the IRS's statutory liens were superior to those of New Jersey, and granted judgment in favor of the IRS. Specifically, the court held that the Division's tax liens, arising under N.J. Stat. Ann. § 54:49-1, were not sufficiently choate to defeat the priority of the federal tax liens arising under sections 6321 and 6322. The court further found that the Division's tax assessments did not "elevate the state to the level of `judgment creditor' within the meaning of 26 U.S.C. § 6323(a)."[5] Monica Fuel, Inc. v. IRS, No. 91-748 at 10 (D. N.J. Nov. 20, 1991) (order granting summary judgment). The Division moved for reargument, claiming that the tax deficiency assessments it issued in 1989 rendered its tax liens fully choate and, therefore, superior to the federal liens in question. The court again rejected the Division's argument, noting that "the state liens were not choate at the time assessed because N.J.S.A. 54:49-1 contemplates judicial enforcement of (..continued) accordance with the court's final order once it was no longer subject to appeal.

[5]. 26 U.S.C. § 6323(a) provides:

> Except as otherwise provided in subsection (c), the lien imposed by section 6321 shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until the notice thereof has been filed . . . .

state liens."[6] Monica Fuel, Inc. v. IRS, No. 91-748 at 3 (D.

N.J. May 10, 1994) (order granting summary judgment). The

Division now appeals. We have jurisdiction under 28 U.S.C.

§ 1291.

The district court's determination that New Jersey's

tax liens were inchoate and therefore not entitled to priority is

a legal conclusion subject to plenary review. Keystone Chapter,

Associate Builders and Contractors, Inc. v. Foley, 1994 WL 513971

at *5 (3d Cir. 1994), citing Gregoire v. Centennial School Dist.,

907 F.2d 1366, 1370 (3d Cir. 1990).

## II.

Federal tax liens do not automatically prime all other

liens. Rather, priority is governed by the federal common-law

principle that "`the first in time is the first in right.'"[7]

---

[6]. In its motion for reargument the Division also claimed that the court had failed to consider adequately the certificate of debt which, under state law, entitled the Division to treatment as a judgment lien creditor. The district court granted reargument on the narrow issue of whether the entry of a certificate of debt raises the state to the status of judgment lien creditor. The court concluded that upon such entry the Division did not acquire judgment lien creditor status because a certificate of debt "does not qualify as a `valid judgment, in a court of record and of competent jurisdiction' as specifically required by 26 C.F.R. 301 6323(h)-1(g)." Monica Fuel, Inc. v. IRS, No. 91-748 at 7 (D. N.J. May 10, 1994) (order granting summary judgment). The Division does not contest this aspect of the district court's judgment on appeal.

[7]. Over the years, the Supreme Court and this court have consistently held that federal law is determinative where the question involved is the priority to be accorded a lien of the federal government, whatever its source. United States v. Security Trust & Savings Bank of San Diego, 340 U.S. 47, 49 (1950); In re Lehigh Valley Mills, Inc., 341 F.2d 398, 400 (3d Cir. 1965) (collecting cases).

United States v. McDermott, 113 S.Ct. 1526, 1528 (1993), quoting United States v. New Britain, 347 U.S. 81, 85 (1954).  As stated by Chief Justice Marshall in Rankin & Schatzell v. Scott, 12 Wheat. (25 U.S.) 177, 179 (1827):  "The principle is believed to be universal that a prior lien gives a prior claim, which is entitled to prior satisfaction, out of the subject it binds . . . ."  12 Wheat. at 179.  It is critical, therefore, for the purpose of determining priority, to ascertain when competing liens, whether federal- or state-created, arise.

Under 26 U.S.C. §§ 6321 and 6322, federal tax liens arise when the underlying taxes are assessed.  The priority of a state lien depends on when it "attached to the property in question and became choate."  New Britain, 347 U.S. at 86.  As the Supreme Court has stated, "a competing state lien [is considered] to be in existence for `first in time' purposes only when it has been `perfected . . . .'"  McDermott, 113 S.Ct at 1528, quoting New Britain, 347 U.S. at 84.  That is, the state lien must be "perfected in the sense that there is nothing more to be done to have a choate lien -- when the identity of the lienor, the property subject to the lien, and the amount of the lien are established."  United States v. Vermont, 377 U.S. 351, 355 (1964).

The Division argues that New Britain controls this case and that the state liens have priority because the identity of the lienor (the State of New Jersey), the property subject to the lien (all of Monica Fuel's property, according to N.J. Stat. Ann. § 54:49-1) and the amount of the lien (the amount of the

assessments) were all established prior to when the federal liens arose.

The IRS does not dispute that the first two choateness requirements were satisfied. It concedes that the identity of the lienor and the property subject to the lien were known well before the federal liens arose. The IRS does, however, claim that the amount of the state liens were not sufficiently established and, consequently, not entitled to priority. Moreover, in the event that we find the state lien amounts were sufficiently fixed to satisfy the final New Britain factor, the IRS makes an additional argument, namely that the state tax liens were inchoate because they were not summarily enforceable.[8] We will address these two distinct issues in turn.

A.

As noted above, one requirement of choateness under the standard articulated by the Supreme Court in New Britain is that

---

[8]. The IRS posits an additional argument which presents a much broader challenge to the Division's right to the interpleaded funds:

> "[I]t is submitted that the assets at issue
> here were not subject to the section 54:49-1
> lien because they were purchasable (indeed,
> they were purchased) in the usual course of
> business . . . . Thus, not until the
> Division filed its warrant [of execution] or
> levied on the property could it be said that
> the Division had a lien, choate or otherwise,
> on the property at issue here."

Appellee's Br. at 30.

We have considered this argument and find it to be without merit.

the amount of the state lien be "established."  In an attempt to convince us that the liens met the requirements of New Britain, the Division makes two separate arguments.  First, it contends that the amounts were sufficiently established upon assessment.  Alternatively, the Division claims that the amounts became fixed when the period for filing a protest expired.[9]  The IRS suggests that when assessed, the amounts were neither final nor established; rather, they represented nothing more than debts which were open to contest and revision.[10]  Appellee's Br. at 17.  Indeed, the taxpayer may, within thirty days of the notice of assessment, file a protest and request a hearing, N.J. Stat. Ann. § 54:49-18, or, in the alternative, file an appeal with the New Jersey Tax Court within 90 days of being notified of an assessment.[11]  N.J. Stat. Ann. § 54:51A-13.  Although either

---

[9].    Based on language in the New Jersey statute providing that a lien on unpaid taxes arises "from the time the [taxes] shall be due[,]" the Division initially argued that the amounts were sufficiently established when Monica Fuel filed its tax returns indicating the amount due.  The district court rejected this contention relying primarily upon In re Priest, 712 F.2d 1326 (9th Cir. 1983), modified, 725 F.2d 477 (1984), wherein the Court of Appeals for the Ninth Circuit concluded that the "mere receipt of a delinquent State tax return is too vague and indefinite a standard by which to establish a lien that is capable of taking priority over a federal lien."  In re Priest, 712 F.2d at 1329.  The Division has abandoned this argument on appeal.

[10].    Although in the portion of its brief challenging the specificity of the state lien amounts upon assessment, the IRS consistently refers only to the Division's March 23, 1989, assessment ("[t]he Division's earliest claim to the fund," Appellee's Br. at 11), we understand the IRS's argument to apply to both of the Division's assessments.

[11].    Effective July 1, 1993, the 30-day protest period was expanded to 90 days.  In addition, the commencement date for the 90-day period for appeal to the Tax Court was changed from the

process might result in an order modifying or vacating the assessment, these remedies do not interfere in the first instance with the right of the Division to collect the unpaid tax. Significantly, the New Jersey statute specifically authorizes collection by the Division of the amounts assessed prior to the expiration of the protest period. N.J. Stat. Ann. § 54:49-18. See also N.J. Stat. Ann. §§ 54:49-12 and 54:49-13a. In fact, payment must be made within fifteen days of notification to avoid the imposition of an additional penalty of five percent. N.J. Stat. Ann. §§ 54:49-8 and 54:49-9.

The state lien amounts unquestionably were, in our view, established once the 90-day period for filing an appeal with the tax court lapsed, as they became impervious to challenge and were therefore fixed and specific. We also agree with the Division, however, that the amounts were established sufficiently when the Division notified Monica Fuel of the assessments. The fact that the Division had the authority to enforce the liens -- whether sued upon or not -- prior to the expiration of the protest period persuades us that the specificity of the amount of a lien arising under N.J. Stat. Ann. § 54:49-1 is unaffected by the taxpayer's right to appeal. See In re Lehigh Valley Mills, Inc., 341 F.2d 398, 401 (3d Cir. 1965) (where a lien is enforceable against the property by a summary proceeding, the certainty of the lien amount is established). Accordingly, we

(..continued)
issuance of the tax assessment to the issuance by the Division of a final determination on any protest. N.J. Stat. Ann. § 54:49-18 (West 1994).

conclude that on August 30, 1989 -- the date Monica Fuel was notified of the Division's second and final assessment -- both of the state tax liens satisfied the New Britain test for choateness, as the identity of the lienor, the property subject to the lien and the amount of the lien were all established.[12]

B.

The IRS insists that the Division nevertheless failed to achieve choate liens because the assessments were not summarily enforceable. The IRS cites several cases -- McDermott, Vermont and T.H. Rogers Lumber Co. v. Apel, 468 F.2d 14 (10th Cir. 1972) -- which, it contends, stand for the proposition that in addition to satisfying the New Britain test, state liens must also be summarily enforceable to prime a competing federal lien. Appellee's Br. at 17.

We agree that a right to enforce a lien summarily (that is, without a judicial proceeding) is a requirement of choateness in addition to the tripartite rule of fixed identity, property and amount, articulated in New Britain.[13] Indeed, a number of

_____

[12]. Consequently, we need not reach the federal government's claim that the Division's failure, once the appeal period expired, to "formally record in its books [Monica Fuel's] debt to the State," itself renders the lien inchoate. Appellee's Br. at 25-26.

[13]. The Supreme Court has made passing references to summary enforceability, implicitly recognizing that the right to summarily enforce a state lien is a requirement of choateness. See, e.g., United States v. McDermott, 113 S. Ct. 1526, 1529-30 n.5 (1993); United States v. Vermont, 377 U.S. 351, 359 n.12 (1964). See also In re Thriftway Auto Rental Corp. v. Herzog, 457 F.2d 409, 414 n.8 (2d Cir. 1972), citing Vermont, 377 U.S. at 359 & n.12.

courts have expressly indicated that such a requirement exists. See In re Terwilliger's Catering Plus, Inc., 911 F.2d 1168, 1176 (6th Cir. 1990) (state lien holder must show that he or she had the right to enforce the lien prior to the attachment of the federal lien); Apel, 468 F.2d at 18 (choateness requirement can only be met if the lien is enforceable by summary proceedings); Burrus v. Oklahoma Tax Comm'n, 850 F. Supp. 963, 964 (W.D. Okl. 1993) (nonfederal tax lien must be enforceable as well as otherwise choate); Homestead Land Title Company v. United States, 1993 WL 360389, at *3 (D. Kan. August 17, 1993) (lien which is not summarily enforceable is inchoate); United States v. Utah State Tax Comm'n, 642 F. Supp 8, 10 (D. Utah 1981) (nonfederal lien must be summarily enforceable and not have conditions that affect its viability); In re Bright Designed Floors, Inc., 66-2 U.S. Tax Cas. (CCH) ¶ 9752 (S.D. N.Y. 1966) (test of perfection is whether a lien is "presently enforceable").

Although we agree with the IRS that state liens must be summarily enforceable to attain priority over later arising federal tax liens, we do not agree that New Jersey's liens fail to satisfy this requirement. The IRS argues that the Division's February 1990 filing of its certificate of debt did not perfect the state liens because the Division did not levy on Monica Fuel's property. The IRS argues further that because the Division's warrant of execution (also issued in February 1990) had expired before the Division could actually collect the funds owed, the lien, itself, also expired, leaving the Division without a means for summary enforcement.

As an initial matter, we note again that a warrant of execution does not create the state lien.  In re Blease, 605 F.2d at 98.  Thus, the expiration of the warrants in this case did not terminate the Division's lien.  Moreover, the requirement that state liens be summarily enforceable does not, in our view, compel the state to take possession of the debtor's property in order to obtain a choate lien and achieve priority.  Choateness only requires that the state have a right to enforce its lien in a summary fashion.

As the Court recognized in Vermont, where ministerial acts which do not affect the viability of the lien remain, the lien is nevertheless summarily enforceable.  See Utah State Tax Comm'n, 642 F. Supp at 10, citing Vermont, 377 U.S. at 359 n.11.[14]  Section 54:49-1 of the New Jersey tax code gives New Jersey the right to enforce its liens upon assessment.  The New Jersey statute also provides two tools for enforcement -- the certificate of debt and the warrant of execution -- neither of which require the Division to engage in a judicial contest to attain a judgment in its favor.  Therefore, the state liens at issue in this case were not susceptible to "[n]umerous contingencies which might prevent the lien from becoming perfected by a judgment awarded and recorded."  See United States v. Security Trust & Savings Bank of San Diego, 340 U.S. 47, 50

---

[14].    In footnote 11 the Court cites to a footnote in United States v. Vermont, 317 F.2d 446, 448 n.2 (2d Cir. 1963), wherein the Court of Appeals for the Second Circuit describes the steps required before Vermont could foreclose on the real property at issue in that case.

(1950).  In other words, the Division's liens were "given the force of a judgment" upon assessment.  Vermont, 377 U.S. at 359.

### III.

For the reasons set forth above, we conclude that the state tax liens were choate and, therefore, entitled to priority over the liens of the IRS.  Accordingly, we will reverse the district court's grant of summary judgment in favor of the IRS and remand the case for further proceedings consistent with this opinion.

Monica Fuel, Inc. v. IRS, No. 94-5406

SLOVITER, Chief Judge, concurring in the judgment.

The majority has written a creditable opinion which reaches a plausible result in light of the positions taken (and not taken) by the Internal Revenue Service in this case. I believe, however, that there are additional considerations that require some discussion.

Of concern to me is that despite the fact that New Jersey's tax scheme does provide methods for enforcement of a tax lien after public notice of the lien, as a result of this opinion the mere assessment of taxes due is enough to render that lien choate and hence entitled to priority over a federal tax lien. I do not question that New Jersey's tax lien would become summarily enforceable, and therefore choate, under United States v. Vermont, 377 U.S. 351 (1964), when a certificate of debt issued by the Director of the Division of Taxation is docketed by the Clerk of the Superior Court under N.J. Stat. Ann. § 54:49-12, or when a warrant issued by the Director is filed with the county clerk and docketed under N.J. Stat. Ann. § 54:49-13a. However, in this case, neither of these procedures was effectively utilized until the first three federal tax assessments, totalling almost $60,000, had been made.[15] Nonetheless, the majority

---

[15]. Three federal tax assessments totalling almost $60,000 were made against Monica Fuel on September 18 and 25, 1989 and December 4, 1989. Thereafter, (1) the Division issued a Certificate of Debt to the clerk of the New Jersey Superior Court on February 5, 1990, and the clerk entered judgment on the record of docketed judgments on February 14, 1990, and (2) the Division issued a warrant of execution to one of its employees on February

relies merely on New Jersey's assessments on March 23, 1989 and August 30, 1989 as fulfilling the requirements for choateness.  I am far less certain than the majority that some additional act that would provide public notice of the state tax lien is not required to render the lien summarily enforceable.[16]

It is true, as the Division argues, that the Supreme Court stated in Vermont that the assessment under Vermont's statutory scheme "was given the force of a judgment."  Vermont, 377 U.S. at 359 (quoting Bull v. United States, 295 U.S. 247, 260 (1935)).  But the State of Vermont in that case had not only assessed taxes; it also had filed a notice of lien with the city clerk before the federal taxes were assessed.  See United States v. Vermont, 317 F.2d 446, 447 (2d Cir. 1963), aff'd, 377 U.S. 351 (1964).  The Court's holding that Vermont's tax lien was entitled to priority over the subsequent federal tax lien may therefore have reflected an unspoken premise that the public recording of

(..continued)
23, 1990, which was filed with the Camden County Clerk on the same day.

[16].  The Division suggests that any requirement of public recording of state tax liens would impose a "double standard" in determining the choateness of federal and state tax liens.  I recognize that a federal tax lien need not be publicly recorded in order to become choate.  See 26 U.S.C. §§ 6321-22; United States v. McDermott, 113 S. Ct. 1526, 1531 (1993).  Whether public recording is required to render a state lien choate is a matter of federal law to be resolved with reference, in the first instance, to the particular state scheme.  See United States v. Security Trust & Sav. Bank, 340 U.S. 47, 49-50 (1950).  The Division cites us to no New Jersey appellate case holding that mere assessment, absent more, renders the state tax lien summarily enforceable.

the lien was an element of choateness, either as a matter of federal law or under Vermont's particular statutory scheme.

Whether there is such a requirement has not been addressed by the Supreme Court,[17] and the few federal district and appellate courts that have broached the question have reached different results. Compare In re Thriftway Auto Rental Corp., 457 F.2d 409, 412 & 414, n.8 (2d Cir. 1972) (applying state court decisions holding city tax lien to arise, not upon assessment, but upon docketing of warrant, and holding city tax lien that arose upon docketing to be "summarily enforceable" under Vermont) with Noriega & Alexander v. United States, 859 F. Supp. 406 (E.D. Cal. 1994) (holding that state tax lien under California statutory scheme becomes choate upon assessment and rejecting argument that it does not become choate until notice of tax lien filed). Nonetheless, I do not understand the IRS to so argue in this case and thus leave that issue for another day.[18]

I also cannot agree with another aspect of the majority's analysis. I agree that under the facts of this case the tax lien based on the Division's March 23, 1989 assessment

---

[17]. The Supreme Court's decision in United States v. New Britain, 347 U.S. 81 (1954), does not reveal whether the state tax liens at issue in that case had been publicly recorded. Even if there was no recording in that case, the state scheme at issue may have differed significantly from the scheme at issue in this case, where some form of public recording is apparently required before the state may enforce its lien.

[18]. At oral argument, the IRS counsel, in response to a direct question, stated that he was not arguing that its lien was entitled to priority on the basis of the lack of any public recording in this case. See Transcript of Oral Argument, Jan. 24, 1995, at 24.

met the third requirement of Vermont that "the amount of the lien [be] established" before the federal assessment. Vermont, 377 U.S. at 355 (quoting United States v. New Britain, 347 U.S. 81, 84 (1954)). By then, the time for protest and appeal of that assessment under New Jersey law had passed. I would not decide, as does the majority, that the requirement that "the amount of the lien [be] established" was met under the New Jersey statutory scheme while the amounts assessed were still subject to protest and appeal under N.J. Stat. Ann. §§ 54:49-18 and 54:51A-13 et seq. We need not include that dictum here, and I believe it is questionable whether the requirement of choateness that the amount of the lien have been established is met as long as the period for appeal and protest has not passed.

Nonetheless, given the IRS's waiver of the public recording issue I agree with the majority's result.[19] Because the Division's lien for $76,554.19 in taxes assessed on March 23, 1989 became definite in amount as of the expiration of the ninety day appeal period, which preceded the first federal tax assessment on September 18, 1989 and exceeded the amount of the approximately $60,000 in escrowed bulk sale proceeds, I would hold in this case that the Division's lien was entitled to priority as of that time.[20]

_____

[19]. I agree with the majority's holding that neither federal nor New Jersey law requires a state taxing authority actually to levy on a taxpayer's property in order to have a choate lien.

[20]. Contrary to the IRS's argument, Brief for Appellee at 25-26, such a holding would be consistent with In re Priest, 712 F.2d 1327, 1329 (9th Cir. 1983), modified, 725 F.2d 477 (9th Cir. 1984), which held that a tax lien was not choate upon the taxing

(..continued)
authority's mere receipt of a delinquent tax return, in part because the state had taken no action to determine the amount owed by the taxpayer and "the total amount of the lien could not be known until the Director computed the interest, penalties and fees."  Here, the Division's computation of tax, interest and penalties was communicated to the taxpayer in the Division's March 23, 1989 assessment, and the amounts became fixed at the expiration of the appeal period.  For the same reason, such a holding would also be consistent with Brown v. State of Maryland, 699 F. Supp. 1149, 1154 (D. Md. 1987), aff'd, 862 F.2d 869, 870 (4th Cir. 1988), also relied upon by the IRS.