In the Matter of Harry JOHNS and Claire Johns, Debtors.

In the Matter of Harris L. Klear and Betty G. Klear, Debtors.

State of New Jersey, Appellant,

v.

United States of America, Appellee.

Civ.A. Nos. 99–2521 (SMO), 99–1880(JEI).
Bankruptcy Nos. 97–15413, 97–199904.

United States District Court, D. New Jersey.

Oct. 7, 1999.

Charles M. Flesch, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC., Dayna L. Olson, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC., ·Carol Johnston, Deputy Attorney General, Department of Public Law & Public Safety, Division of Law, Trenton, NJ, Leonard R. Wizmur, Wizmur & Gordon, Marlton, NJ, for Harris and Betty Klear

Jeffrey Jenkins, Jenkins & Clayman, Haddon Heights, NJ, for Harry and Claire Johns.

## OPINION

IRENAS, District Judge.

Presently before this Court is the State of New Jersey, Division of Taxation's appeal from two Bankruptcy Court orders granting debtors' motions objecting to the secured claims of the State.[1] The United

---

1. *See* Consolidation Order, June 30, 1999 (consolidating *In re Harris L. Klear and Betty*

States had an interest in both cases because the State alleged that its tax lien was choate and therefore entitled to priority over a United States Internal Revenue Service lien. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1). For the reasons set forth below, this Court will reverse the Bankruptcy Court's orders.

 The standard of review applied by a district court when reviewing the ruling of a bankruptcy court is determined by the nature of the issues presented on appeal. Finding of fact are not to be set aside unless they are "clearly erroneous." *See* Fed. R. of Bank. P. 8013; *In re Indian Palms Ass'n Ltd.*, 61 F.3d 197, 203 (3d Cir.1995); *J.P. Fyfe, Inc. v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989). Questions of law are subject to de novo or plenary review. *In re Brown*, 951 F.2d 564, 567 (3d Cir.1991); *J.P Fyfe*, 891 F.2d at 69. Since only a question of law is involved in these appeals, our review is plenary.

## I.

### A. Facts of *Klear*

Harris and Betty Klear filed a petition for relief under Chapter 13 of the Bankruptcy Code on November 6, 1997. Following that filing, the Internal Revenue Service ("IRS") filed a proof of claim in the amount of: $25,897.66 secured; $19,341.82 priority; and $76,525.15 general unsecured claim. The IRS' secured claim included an assessed income tax liability owed by the Klears for the 1991 tax year.

While the Klears sought confirmation of their Chapter 13 Plan, the State of New Jersey, Division of Taxation ("Division" or "State") submitted an objection to confirmation on the ground that it would not receive full payment of its claims. The State's secured claim included a liability (tax, interest, and penalty) for the Klears

1991 New Jersey Gross Income Tax, N.J.S.A. 54A:9–1, et seq. The Klears moved to reclassify the State's secured lien. Specifically, they argue that because their real property was encumbered by a mortgage, only $9,097.66 was available for either the state or federal secured claims to attach.

It is undisputed that the Klears filed a timely 1991 state income tax return on April 15, 1992, without payment, and that on May 24, 1992 the State entered it on its computers. It is uncontested that penalties and interest were included in its claimed lien. Also undisputed is that the Klears' federal taxes were assessed on May 25, 1992.[2]

### B. Facts of *Johns*

Harry and Claire Johns filed a petition for relief under Chapter 13 of the Bankruptcy Code on June 9, 1998. Following that filing, the Internal Revenue Service ("IRS") filed a proof of claim in the amount of: $52,880 secured claim; $4,816.71 priority claim; and $154,376.98 general unsecured claim. The IRS' secured claim included an assessed income tax liability owed by the Johns for the 1983 tax year.

While the Johns sought confirmation of their Chapter 13 Plan, the Division submitted an objection to confirmation on the ground that it would not receive full payment of its claims. The State's secured claim included a liability for unpaid New Jersey Gross Income Tax, N.J.S.A. 54A:9–1, et seq. for the 1990 tax year. The Johns filed a motion objecting to the State's claim arguing that the amount of equity they have would be consumed by the IRS' claim.

It is undisputed that the Johns filed their state income tax return on October 2, 1991, without payment, and that on Octo-

---

1. *G. Klear*, decided by the Bankruptcy Court on March 2, 1999 and *In re Harry Johns and Claire Johns*, decided by the Bankruptcy Court on April 6, 1999).

2. According to 26 U.S.C. §§ 6321 and 6322, federal tax liens arise when the underlying taxes are assessed.

ber 22, 1991, the state entered it on its computers. It is uncontested that penalties and interest were included in its claimed lien. Also undisputed is that the Johns' 1983 federal tax liability was assessed on November 25, 1991.

In *Klear* and *Johns,* the Division opposed the debtors' motions and argued that they did not establish that the IRS liens had priority over the state liens. On March 2, 1999 and April 6, 1999, respectively, the Honorable Gloria Burns, United States Bankruptcy Judge, granted the Klears' and Johns' motions to reclassify the State's secured liens. In both opinions, the Bankruptcy Court held that the federal lien had priority over the state lien because the State failed to show that the amount of its lien was established before the federal lien arose.

## II.

■■■ Federal tax liens do not automatically prime all other liens. *Aquilino v. United States,* 363 U.S. 509, 513–14, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960); *Monica Fuel, Inc. v. IRS,* 56 F.3d 508, 511 (3d Cir.1995). According to the Supreme Court, the priority of statutory liens is determined by the principle "the first in time is the first in right." *United States v. City of New Britain Conn.,* 347 U.S. 81, 84–85, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *United States v. McDermott,* 507 U.S. 447, 449, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993); *United States v. Equitable Life Assurance Soc' y,* 384 U.S. 323, 327–29, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966).

■■■ A state-created lien must be choate or perfected in order to take precedence over a later assessed federal tax lien. *New Britain,* 347 U.S. at 84–86, 74 S.Ct. 367; *McDermott,* 507 U.S. at 449–50, 113 S.Ct. 1526. The priority of a state lien depends on when it attached to the property in question and on its "choateness," when nothing more can be done to perfect it. *McDermott,* 507 U.S. at 449–50, 113 S.Ct. 1526. The Supreme Court has relied on whether "[1]the identity of the lienor,

[2] the property subject to the lien, and [3] the amount of the lien are established" to decide whether a state lien is choate. *Id.* (quoting *United States v. New Britain,* 347 U.S. at 84, 74 S.Ct. 367); *Monica Fuel, Inc.,* 56 F.3d at 511.

■■■ In addition to these three requirements, a state-created tax lien must be summarily enforceable to prime a competing federal tax lien. *Monica Fuel, Inc.,* 56 F.3d at 512–13, & n. 13 (explaining that summarily enforceable means "without a judicial proceeding"); *United States v. Vermont,* 377 U.S. 351, 359 n. 12, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1965); *In re Terwilliger's Catering Plus, Inc.,* 911 F.2d 1168, 1176 (6th Cir.1990), *cert. denied,* 501 U.S. 1212, 111 S.Ct. 2815, 115 L.Ed.2d 987 (1991)("state lien holder must show that he had the right to enforce the lien at some time prior to the attachment of the federal lien"); *see also Minn., Dep' t of Revenue v. United States of America,* 184 F.3d 725, 728 (8th Cir.1999) ("the test for choateness or perfection also requires that the creditor have the right to summarily enforce its lien").

On appeal, the Division argues that both the IRS and the Bankruptcy Court misread the applicable New Jersey tax statutes. It asserts that the state liens have priority because the identity of lienor, the property subject to the lien and the amount of the lien were established prior to May 25, 1992 in the *Klear* case and prior to November 25, 1991 in the *Johns* case, the dates the federal liens arose. In particular, the Division contends that the amount of the state liens were established on the days it received the debtors' returns (April 15, 1992 for the Klears and October 2, 1991 for the Johns). The Division also claims that the liens were summarily enforceable.

In response, the IRS claims that the state liens were inchoate because the amount of the liens were not sufficiently established on the dates the State received the debtors' tax returns. It also claims

that the state liens were not perfected because they were not summarily enforceable.

## III.

### A.

▇ The state liens at issue arose under the New Jersey Tax Uniform Procedure Law, N.J.S.A. 54:49–1 that provides:

> The taxes, fees, interest and penalties imposed by any such State law . . . from the time the same has all be due, shall be a personal debt of the taxpayer to the State. . . . Such debt, whether sued upon or not, shall be a lien on all property of the debtor . . . except as may be provided to the contrary in any other law. . . .

Although a state lien may arise on the date the tax is due and attach to the debtor's property, the due date is not sufficient to create a choate lien. The State lien only becomes established and enforceable on the assessment date. *Monica Fuel Inc.*, 56 F.3d 508, 512 (3d Cir.1995); N.J.S.A. 54:49–12; N.J.S.A.–13(a).

In *Monica Fuel, Inc.*, 56 F.3d 508, the Third Circuit addressed the same issue as this Court now confronts, whether an IRS lien had priority over a state tax lien. Like the liens in the present action, the state liens at issue in *Monica Fuel, Inc.*, although related to motor fuels, arose pursuant to New Jersey's State Tax Uniform Procedure Law ("Uniform Law"). *Id.* at 508–09. But, unlike the Gross Income Tax Act, the Motor Fuels Act requires that tax assessments be made according to requirements of the Uniform Law. N.J.S.A. 54:48–1 et seq.; N.J.S.A. 54:39–49.

The *Monica* Court appropriately applied the assessment procedures of the Uniform Law which allow the Division to make an assessment only after it determines that there is a deficiency and issues a Notice of Assessment to the taxpayer. *Monica Fuel, Inc.*, 56 F.3d at 509; N.J.S.A. 54:49–6.

▇ By contrast, the assessment procedures of the New Jersey Gross Income Tax Act ("NJGITA") and not those of the Uniform Law,[3] must be applied to the Klears' and the Johns' liens in the present case. The NJGITA provides for two types of assessments: (1) pursuant to N.J.S.A. 54A:9–3(a), the "amount of tax which a return shows is due" is "deemed to be assessed on the date of the filing of the return";[4] and (2) pursuant to N.J.S.A. 54A:9–2(a), the Division, after an examination or audit, may assess a deficiency in the amount the taxpayer owes beyond what is shown in a filed return, if any. A deficiency assessment may arise from under reporting, from taxpayer misrepresentation or from failure of a taxpayer to file a return. *Id.* Unlike a tax return assessment, a deficiency assessment requires that the Director first issue a notice of deficiency of tax. *Id.* The notice becomes a deficiency assessment of the tax due 90 days from service unless the taxpayer files a protest. *Id.* at 54A:9–2(b).

In the instant cases, the State concedes that it never formally assessed as deficiencies the interest and penalties for nonpayment. But, it argues that since penalties and interest can be calculated based on the tax due as shown on the returns, they should be deemed "assessed" when the returns were filed.[5] The Court must

---

**3.** Pursuant to N.J.S.A. 54:49–1, the New Jersey Tax Uniform Procedure Law applies unless there is a specific conflict in any other law. Here, the New Jersey Gross Income Tax Act assessment provisions conflict with the Uniform Law's assessment procedures, therefore, the Uniform Law does not govern the Gross Income Tax assessment at issue in this case.

**4.** This form of assessment occurs only in those instances where the taxpayer files a timely return but has not paid the tax due as shown on the return.

**5.** In some cases, in fact, penalties and interest cannot be determined from the face of the return because the Division has discretionary powers with respect to the imposition of penalties and interest. N.J.S.A. 54:49–11 (allow-

decide whether the penalties and interest are deemed shown on the taxpayer's return and thus, assessed when the return is filed. If not, these items would be subject to a deficiency assessment which was not made in either *Klear* or *Johns.*

In N.J.S.A. 54A:9–5(f), NJGITA states that interest "shall be ... assessed, collected and paid in the same manner as income tax." Also, in N.J.S.A. 54A9–6(j), NJGITA provides that penalties or additions Ashall be ... assessed, collected and paid in the same manner as taxes.... "However, in N.J.S.A. 54A:9–3(a), the tax deemed assessed or the filing of the return is defined as Athe amount of tax which a return shows to be due." Since the taxpayers did not include penalty and interest on their returns, it would not be deemed "assessed" on the dates the returns were filed. Assessment of penalty and interest must be made through the deficiency assessment process.

The NJGITA defines deficiency as: "the amount imposed by this act, less (i) the amount shown as the tax upon the taxpayer's return...." N.J.S.A. 54A:9–2(g). This definition distinguishes the tax due as shown on the return submitted by the taxpayer, even if not paid, from any later deficiency assessment which will usually include penalty and interest.

The Court finds that to the extent the State's liens include amounts actually shown as taxes due on the returns, the liens are choate; but, to the extent such liens include penalty and interest, the liens are inchoate since such amounts were never assessed by the State. Accordingly, the Court concludes that on April 15, 1992, for the Klears and on October 2, 1991, for the

ing the Director of the Division, under certain circumstances, to waive the payment of penalties and interest).

6. NJGITA provides that "[i]f any person liable under this act for the payment of any tax, addition to tax, penalty or interest neglects ... to pay ... within 10 days after the notice and demand ... the director may ... issue a certificate of debt...." The IRS argues that the lien is not summarily enforceable until

Johns—the dates each filed their state tax returns—the state liens for the amounts shown on the returns were assessed and the three prong *New Britain* choateness test was met. *See Monica Fuel, Inc.*, 56 F.3d at 512.

### B.

As discussed above, the Third Circuit requires that in addition to identity, property, and amount, the three requirements articulated by the Supreme Court, "the right to enforce a lien summarily (that is, without a judicial proceeding) is a requirement of choateness." *Monica Fuel, Inc.*, 56 F.3d at 512. The federal system of assessment requires the IRS to assess and process a taxpayer's tax amount and then issue a demand letter. 26 U.S.C. § 6203. Therefore, the IRS cannot begin to summarily enforce its lien until after they have administratively processed the taxpayer's return. The IRS argues that even if the state liens were established, they did not have priority over the federal liens because their assessments were not summarily enforceable.

Under New Jersey's Tax Uniform Procedure Law, once a tax is properly "assessed" no judicial action is required to enforce the state's liens. N.J.S.A. 54–49–1; *Monica Fuel, Inc.*, 56 F.3d at 513. Summary enforcement can be accomplished either by a warrant of execution on the taxpayer's property, N.J.S.A. 54–49–13a, or by the filing of a certificate of debt with the clerk of the Superior Court of New Jersey who will enter the debt as a judgment. N.J.S.A. 54–49–12; *Monica Fuel, Inc.*, 56 F.3d at 513.[6] Therefore, on

this notice is given and ten days have elapsed without payment. This argument is not persuasive. Notification and demand are simply part of the State's summary enforcement process and require no judicial action. *Monica Fuel, Inc.*, 56 F.3d at 513 ("The New Jersey Statute also provides [] tools for enforcement ... neither of which require the Division to engage in judicial contest to attain a judgment in its favor."). The state does not have to

the days the Klears (April 15, 1992) and the Johns (October 2, 1991) filed their returns, the State could have enforced its liens for the amounts shown due on the tax returns. *See Monica Fuel, Inc.*, 56 F.3d at 513 ("Choateness only requires that the state have a right to enforce its lien in a summary fashion.").

In the *Klear* case, the State's lien for the reported tax became choate on April 15, 1992, while the federal tax lien arose on May 25, 1992. In the *Johns* case, the State's lien for the reported tax became choate on October 2, 1991, while the federal tax lien arose on November 25, 1991. For the reasons set forth above, the Court concludes that the state tax liens to the extent of the taxes shown on the returns were choate prior to the later assessed federal tax liens and thus entitled to priority. However, the liens for the interest and penalties are inchoate and therefore, not entitled to priority over the federal liens. Accordingly, the Court reverses the Bankruptcy Court's orders and remands the case for a determination of the amounts of the State's liens entitled to priority in accordance with this opinion.

actually commence enforcement proceedings for the lien to be summarily enforceable. *Id.*